Return to: Bell, Davis & Pitt, P.A. Box

App. #1

STATE OF NORTH CAROLINA

COUNTY OF FORSYTH

FORS. : CO.NC    157    FEE:$   86.00
PRESENTED & RECORDED: 01/06/1998    4:30PM
DICKIE C. WOOD REGISTER OF DEEDS BY:HOODVA
BK1980   P1954 - P1993

## DECLARATION OF CONDOMINIUM OF THE
## LOFTS AT ALBERT HALL CONDOMINIUM

THIS DECLARATION (the "Declaration"), made this $18\frac{th}{}$ day of December, 1997, by Piedmont Institute for Research and Technology, LLC, a North Carolina limited liability company with its principal place of business being located in Forsyth County, North Carolina, hereinafter designated "Developer," pursuant to the North Carolina Condominium Act, Chapter 47C, of the General Statutes of North Carolina:

### W I T N E S S E T H:

WHEREAS, Developer is the owner in fee simple of certain real estate (land) situated in the City of Winston-Salem, Forsyth County, North Carolina, legally described in attached Exhibit "A," together with all buildings and improvements now or hereafter constructed or located thereon, and all rights, privileges, easements and appurtenances belonging to or in any way pertaining to said real estate; and

WHEREAS, Developer desires to submit a portion of said property to the Act (as hereinafter defined);

NOW, THEREFORE, Developer, as the owner of said property, hereby declares as follows:

### ARTICLE I

### DEFINITIONS

As used herein, the following words and terms shall have the following meanings:

1.1  Act.

North Carolina Condominium Act, Chapter 47C, General Statutes of North Carolina, as the same is in effect at the time of the recordation of this Declaration of Condominium, or, to the extent required by law, as the same may be amended from time to time.

1.2  Assessments.

"Assessment" shall mean and refer to an Owner's share of the Common Expenses from time to time assessed against an Owner by the Association in the manner herein provided.

1/2/98

Case 1:12-cv-00906-CCE-JLW  Document 12-2  Filed 09/10/12  Page 1 of 40

### 1.3 Association.

The Lofts at Albert Hall Condominium Association, Inc., a North Carolina Not-For-Profit Corporation.

### 1.4 Board.

The Board of Directors of the Association.

### 1.5 Bylaws.

The Bylaws of the Association which are hereby incorporated herein and made a part hereof by this reference.

### 1.6 Common Elements.

All portions of the Condominium except the Units.

### 1.7 Common Expenses.

Expenditures made or liabilities incurred by or on behalf of the Association, together with any allocations to reserve.

### 1.8 Condominium.

The condominium created by this Declaration.

### 1.9 Declarant.

Developer and any person who succeeds to any special Declarant rights pursuant to this Declaration or the Act.

### 1.10 Declarant Control Period.

The period commencing on the date of the recordation of this Declaration of Condominium and continuing until the earlier in time of (i) 120 days after conveyance of seventy-five percent (75%) of the Units (excluding units subsequently developed, if any, by reason of Development Rights under Article XV) to Unit Owners other than a Declarant, or (ii) five years after the first unit is conveyed.

### 1.11 First Mortgage and First Mortgagee.

A first mortgage is a mortgage or deed of trust which has been recorded so as to give constructive notice thereof, and which is a first lien on the Unit described therein. A first mortgagee is the holder, from time to time, of a first mortgage as shown by the records in the office of which the first mortgage is recorded. If there be more than one holder of a first mortgage, they shall be considered as, and act as, one first mortgagee for all purposes under this Declaration and the Bylaws.

2

Case 1:12-cv-00906-CCE-JLW   Document 12-2   Filed 09/10/12   Page 2 of 40

1.12 <u>Floor Plans</u>.

The floor plans of the Condominium recorded with and made a part of this Declaration and attached as Exhibit "B", as the same may hereafter be amended.

1.13 <u>Limited Common Elements</u>.

Those portions of the Common Elements allocated by operation of North Carolina General Statutes, Section 47C-2-102(2) and (4) of the Act for the exclusive use of at least one but fewer than all of the Units and also any limited common elements specifically allocated to Units on the Floor Plans or specified herein.

1.14 <u>Occupant</u>.

Any person or persons in possession of a Unit, including Unit Owners, the family members, lessees, guests, and invitees of such person or persons, and family members, guests and invitees of such lessees.

1.15 <u>Person</u>.

A natural person, corporation, partnership, trust or other entity, or any combination thereof.

1.16 <u>Property</u>.

The real estate submitted to the Act by this Declaration of Condominium, being all of the sixth level (top floor) of the building known as "Albert Hall" (there are a total of six levels in such building) and an adjoining elevator tower and lobby area (located on land described on attached Exhibit A-2) as more fully described on the Floor Plans and including all rights, privileges, easements and appurtenances belonging to or in any way pertaining to said real estate, and further including any real estate submitted to the Act by amendment to this Declaration.

1.17 <u>Security for an Obligation</u>.

The vendor's interest in a contract or deed, mortgagee's interest in a mortgage, beneficiary's interest in a deed of trust, purchaser's interest under a sheriff's certificate of sale during the period of redemption, or the holder's interest in a lien.

1.18 <u>Security Holder</u>.

Any Person owning a Security for an Obligation in a Unit.

1.19 <u>Special Declarant Rights</u>.

The rights reserved herein and in the Bylaws for the benefit

3

BK 966 PG953

of the Declarant, as follows:

(a) To complete the improvements indicated on Floor Plans;

(b) To maintain sales offices, management offices, models and signs advertising the Condominium;

(c) To use easements through the Common Elements;

(d) To elect, appoint or remove members of the Board during the Declarant Control Period; and

(e) To add real estate and improvements so as to become a part of the Condominium. All additional Units must be located within the Albert Hall building (the building within which the Condominium is located), or in the building adjacent thereto known as "Building 256-2", but property submitted to the Act may include real estate under and surrounding either of said buildings, to be utilized by the Condominium for purposes of parking, utilities and other appurtenant functions.

### 1.20 Unit.

That portion of the Condominium, whether or not contained solely or partially within a building, together with its percentage of undivided interest in the Common Elements as set forth on attached Exhibit "C." Each Unit is designated and delineated on the Floor Plans. The term "Unit" shall specifically include any decks or patios appurtenant to any Unit.

### 1.21 Unit Boundaries.

The boundaries of each Unit, both as to vertical and horizontal planes, as shown on the Floor Plans, are the interior undecorated surfaces of the perimeter walls, exterior doors and exterior windows facing the interior of the Unit, the undecorated surfaces of the ceiling facing the interior of the Unit, and the topmost surfaces of the subflooring, and including the decorations on all such interior and topmost surfaces, including, without limitation, all paneling, tiles, wallpaper, paint, finished flooring and other materials constituting any part of the decorated surfaces thereof, and also including all spaces, interior partitions and other fixtures and improvements within such boundaries. Notwithstanding any other provision of this definition, all decks or balconies immediately appurtenant to any Unit and accessible only from a Unit shall be considered a part of that Unit, and the Unit Boundary as to such deck or patio shall consist of the undecorated surface of the ceiling, if any, facing the floor of the Unit, and the top most surface of the unfinished flooring, and shall be bounded by a vertical plane drawn from the exterior perimeter of such balcony or deck, if unenclosed and extended from the ceiling or flooring, whichever extends a greater distance from such exterior building

4

BK_986 P_35

wall, to a hypothetical plane extended from the ceiling or floor, horizontally, until intersectioned with the vertical plane above described.

## 1.22 Unit Owner.

The Person or Persons, including the Declarant, owning a Unit in fee simple, including contract-for-deed purchasers of a Unit, but excluding contract-for-deed purchasers of a Unit who are Security Holders, and also excluding all other Security Holders.

Any term or phrase defined in Section 47C-1-103 of the Act, or in any other provision of the Act, to the extent not defined herein, shall be incorporated by reference herein as if fully defined in this Article I of the Declaration of Condominium of The Lofts at Albert Hall Condominium.

### ARTICLE II

### SUBMISSION OF PROPERTY TO THE ACT

2.1  Submission.

Developer hereby submits the Property to the Act.

2.2  Name.

The Property shall hereafter be known as The Lofts at Albert Hall Condominium.

2.3  Division of Property Into Separately Owned Units.

Developer, pursuant to the Act, and to establish a plan of Condominium ownership for the Condominium, does hereby divide the Property into eighteen (18) Units and does hereby designate all such Units for separate ownership, subject, however, to the provisions of this Declaration and the Bylaws.

2.4  Alterations of Units.

Subject to the provisions of the Bylaws, a Unit may be altered pursuant to the provisions of N.C.G.S. Section 47-C-2-113(a) and (b) of the Act, if approved in accordance with the provisions of the Bylaws.

2.5  Limited Common Elements.

The Limited Common Elements serving or designated to serve each Unit as shown on the Floor Plans or as described in this Declaration are hereby allocated solely and exclusively to each such Unit.

5

## 2.6 Unit Allocations.

The Allocated Interest appurtenant to each Unit (including the undivided interests in the Common Elements, the Common Expense liability, and the votes in the Association allocated to each Unit), are as set out on Exhibit C. The method of determining the Allocated Interests is described in Article III hereunder.

## 2.7 Encumbrances.

The liens, defects, and encumbrances on the Property to which the rights of Unit Owners and Occupants are hereby made subject are set out on attached Exhibit "D."

### ARTICLE III

### ALLOCATED INTERESTS

## 3.1 Undivided Interests In The Common Elements.

The undivided interests in the Common Elements assigned to each Unit, and as set out on Exhibit C attached hereto, have been derived by dividing the approximate total gross square footage of each Unit by the approximate total gross square footage of all Units within the Condominium. The resultant fraction has been rounded off by conversion to a percentage figure so that the sum total of the undivided interests in the Common Elements equals 100%.

## 3.2 Allocation Of Common Expenses.

The Common Expenses of the Association shall be allocated among all of the Units. The budget of the Association shall contain various categories of expense, which categories shall include, but are not limited to, expenses relating to security; expenses relating to insurance; utility and general maintenance expenses; expenses relating to maintenance, repair and replace of the Condominium, the supporting structures and the parking areas in the building or buildings within which the Condominium is located; and expenses relating to elevator maintenance and service to the Property and the parking area. All Common Expenses shall be allocated based upon the percentage of undivided interests in the Common Elements assigned to each Unit, unless otherwise required by the Act, Section 47C-3-115(c). Property and casualty insurance Common Expense shall be assessed based upon the percentage of undivided interests in the Common Elements, Declarant having determined that such an allocation fairly represents risk assessment.

The Board shall allocate expenses among the Units being benefitted by the expenditure of that portion of the budget for which each assessment is made. By way of example, but not by way of limitation, only those Units receiving utilities through a master meter shall be allocated utility costs based on that meter reading

6

and only those units acquiring access to their Unit via the elevator tower shall be charged with the costs of maintaining the elevator. To the extent that any Common Expense is allocated to a particular Unit or group of Units as allowed by this Declaration, that particular expense shall be paid by the Units benefitted thereby in the same proportion that such Units would be assessed a Common Expense if payable by every Unit Owner.

## 3.3  Allocation Of Votes.

All Units shall be entitled to vote on Association matters based on the percentage of undivided interest in the Common Elements allocated to each Unit. That is, each Unit shall have a number of votes equal to the percentage of undivided interest in the Common Elements allocated to such Unit, all as set out on Exhibit C attached hereto as though such number was not a fraction or percentage (i.e., a Unit with an undivided interest of .0544 has 544 votes).

Only Units directly impacted by a particular issue to be voted on by Unit Owners shall vote on such issues. This determination shall be made by the Board and the decision of the Board shall be binding except in the event of a decision made with no reasonable basis.

## ARTICLE IV

## EASEMENTS

### 4.1  Encroachments.

In the event that, by reason of the construction, reconstruction, rehabilitation, alteration, settling or improvement of the buildings or improvements comprising a part of the Property, any part of the Common Elements now or hereafter encroaches upon any part of any Unit, or any part of any Unit now or hereafter encroaches upon any part of the Common Elements, or upon any part of another Unit, an easement for the continued existence and maintenance of each such encroachment is hereby declared and granted and shall continue for so long as each such encroachment exists; provided that in no event shall an easement for such encroachment be created if such encroachment is detrimental to or interferes with the reasonable use and enjoyment of the Common Elements or Units so encroached upon.

### 4.2  Easements Through Walls.

Easements are hereby declared and granted to the Association and to such persons as are authorized by the Association, to install, lay, maintain, repair and replace any chutes, flues, ducts, vents, pipes, wires, conduits, and other utility installations, and structural components running through the walls of the Units,

7

whether or not such walls lie in whole or in part within the boundaries of any Unit.

## 4.3 Easements to Repair, Maintain, Restore and Reconstruct.

Wherever in, and whenever by, this Declaration, the Bylaws or the Act, a Unit Owner, the Association, the Board, or any other person, is authorized to enter upon a Unit or the Common Elements to repair, maintain, restore, replace or reconstruct all or any part of a Unit or the Common Elements, such easements as are necessary for such entry and such repair, maintenance, restoration, replacement or reconstruction are hereby declared and granted.

## 4.4 Declarant's Easements.

Declarant hereby reserves such easements through the Common Elements as may be reasonably necessary for the purposes of discharging its obligations and completing the development and construction of the Condominium, which easements shall exist as long as reasonably necessary for such purposes.

## 4.5 Easements to Run With the Land.

All easements and rights described in this Declaration are appurtenant easements running with the land or real estate, and except as otherwise expressed herein shall be perpetually in full force and effect, and shall inure to the benefit of and be binding upon Declarant, the Association, Unit Owners, Occupants, Security Holders, and any other person having any interest in the Condominium or any part thereof and their respective heirs, successor and assigns. The Condominium and every part thereof shall be conveyed and encumbered subject to and together with all easements and rights described in this Declaration, whether or not specifically mentioned in any such conveyance or encumbrance.

## ARTICLE V

## RESTRICTIONS, CONDITIONS AND COVENANTS

## 5.1 Compliance with Declaration, Bylaws and Rules and Regulations.

Each Unit Owner and Occupant shall comply with all applicable provisions of the Act, this Declaration, the ByLaws, the rules and regulations promulgated by the Board, or the Association, as amended. Failure to comply shall be grounds for an action by the Association, an aggrieved Unit Owner, or any person adversely affected, for recovery of damages, injunction or other relief.

## 5.2 Administration of Condominium.

The Condominium shall be administered in accordance with the provisions of the Act, this Declaration and the Bylaws.

8

041088 F.001

## 5.3 Use Restricted.

Each Unit submitted by this Declaration (but not any amendment hereto) shall be occupied and used by Unit Owners and Occupants for residential purposes only.

## 5.4 Hazardous Use and Waste.

Nothing shall be done to or kept in any Unit or the Common Elements that will increase any rate of insurance maintained with respect to the Condominium without the prior written consent of the Board. No Unit Owner or Occupant shall permit anything to be done to or kept in his Unit or the Common Elements that will result in the cancellation of insurance maintained with respect to the Condominium, or that would be in violation of any law or regulation, or that will result in the commitment of waste (damage, abuse or destruction), to or in his Unit or the Common Elements.

## 5.5 Alterations of Common Elements.

No Unit Owner or Occupant, except Declarant during the Declarant Control Period, shall alter, construct anything upon, or remove anything from the Common Elements, or paint, decorate, landscape or adorn any portion of the Common Elements, without the prior written consent of the Board.

## 5.6 Pets.

Pets shall be allowed in the Condominium as provided by rules and regulations adopted from time to time by the Board or the Association.

## 5.7 Rules and Regulations.

In addition to the foregoing restrictions, conditions and covenants concerning the use of the Condominium, reasonable rules and regulations not in conflict therewith and supplementary thereto may be promulgated and amended from time to time by the Board or the Association as more fully provided in the Bylaws.

## 5.8 Restrictions, Conditions and Covenants to Run With The Land.

Declarant and each Unit Owner and Occupant shall be subject to all restrictions, conditions and covenants of this Declaration, and all such restrictions, conditions and covenants shall be deemed to be covenants running with the land or real estate, and shall bind every person having any interest in the Property, and shall inure to the benefit of every Unit Owner and their respective heirs, successors and assigns.

9

BK1889 P1662

# ARTICLE VI

## ASSESSMENTS

## 6.1  Assessment and Priority of Liens.

The Board has the power to levy assessments against the Units for Common Expenses.  All sums lawfully assessed against any Unit Owner or Unit, whether for the share of the Common Expenses lawfully appertaining to that Unit or otherwise, shall from the time the same become due and payable constitute a lien, in favor of the Association, on such Condominium Unit, prior and superior to all other liens except only (a) the lien for real estate taxes, and (b) the lien of a first mortgage or first deed of trust, if any, to which the Condominium Unit is subject.  Such assessments shall be a lien on the Units against which they are assessed, and if any payment thereof becomes delinquent, the lien may be foreclosed and the Unit sold, or a money judgment obtained against the persons liable therefor, all as set forth in the Bylaws.  All authority to assess and collect liens granted by the Act is hereby given to the Association and the Board.

## 6.2  Personal Liability of Transferee; Statement; Liability of First Mortgagee.

a.   The personal obligation for assessments which are delinquent at the time of transfer of a Unit shall not pass to the transferee of said Unit unless said delinquent assessments are expressly assumed by the transferee.  This provision relieves the transferee of personal obligation only, and in no way relieves the Unit from any applicable lien for nonpayment.

b.  Any transferee referred to in a. above shall be entitled to a statement of unpaid assessments from the Board, pursuant to Section 8.10 of the Bylaws, and such transferee's Unit shall not be subject to a lien for any unpaid assessments against such Unit in excess of the amount therein set forth.

c.   Where a mortgagee, or other person claiming through such mortgagee, pursuant to the remedies provided in a mortgage or deed of trust,  or by foreclosure, or by deed in lieu of foreclosure, obtains title to a Unit, the liability of such mortgagee, or such other person, for assessments shall be only for the assessments, or installments thereof, that would become delinquent if not paid after acquisition of title.

For purposes hereof, title to a Unit shall be deemed acquired by foreclosure upon expiration of the applicable period of redemption.

d.   Without releasing the transferor from any liability therefor, any unpaid portion of assessments which is not a lien

10

under b. above, or resulting, as provided in c. above, from the exercise of remedies in a mortgage or deed of trust, or by foreclosure thereof, or by deed in lieu of such foreclosure, shall be a Common Expense collectible from all Unit Owners, including the transferee under b. above, and the mortgagee or such other person under c. above who acquires ownership by foreclosure or by deed, or assignment, in lieu of foreclosure.

## 6.3 Prohibition Of Exemption From Liability For Contribution Toward Common Expenses.

No Unit Owner may exempt himself from liability for his share of the Common Expenses assessed by the Association by waiver of the use or enjoyment of any of the Common Elements or by abandonment of his Unit or otherwise.

### ARTICLE VII

### MANAGEMENT, MAINTENANCE, REPAIRS, REPLACEMENTS, ALTERATIONS AND IMPROVEMENTS.

### 7.1 Common Elements.

a. By the Association. The management, replacement, maintenance, repair, alteration and improvement of the Common Elements shall be the responsibility of the Association, and, subject to the provisions of Section 7.2 hereof, the cost thereof shall be a Common Expense to the extent not paid by Unit Owners pursuant to the Declaration or the Bylaws. All damage caused to a Unit by any work on or to the Common Elements done by or for the Association shall be repaired by the Association, and the cost thereof shall be a Common Expense.

b. By Unit Owners. Each Unit Owner shall pay all cost to repair and replace all portions of the Common Elements that may become damaged or destroyed by reason of his intentional acts or the intentional acts of any Occupant of his Unit. Such payment shall be made upon demand by the Association, and shall be, for all purposes of collection, considered an Assessment.

### 7.2 Expenses Associated With Limited Common Elements Or Benefiting Less Than All Units.

a. Any Common Expense associated with the maintenance, repair, or replacement of a Limited Common Element shall be assessed against the Unit, or in equal shares to the Units, to which such Limited Common Element was allocated at the time the expense was incurred.

b. In addition, the Association shall assess any Common Expense benefiting less than all of the Units against the Units benefited in proportion to their Common Expense liability.

11

BK1980 P199.

## 7.3 Units.

Each Unit Owner shall maintain his Unit at all times in a good and clean condition, and repair and replace at his expense all portions of his Unit; shall perform his responsibilities in such manner as not to unreasonably disturb other Occupants; shall promptly report to the Board, or its agents, any defect or need for repairs, the responsibility for which is that of the Association; and to the extent that such expense is not covered by the proceeds of insurance carried by the Association, shall pay all costs to repair and replace any portion of another Unit that has become damaged or destroyed by reason of his own acts or omissions, or the acts or omissions of any Occupant of his Unit. Such payment shall be made upon demand by the Unit Owners of such other Unit. Nothing herein contained shall modify any waiver by insurance companies of rights of subrogation.

## 7.4 Waiver of Claims.

Except only as provided in Sections 7.5a. and b., the Association agrees that it shall make no claim against the Unit Owner or Occupant, and each Unit Owner and Occupant agrees that he shall make no claim against the Association, members of the Board, officers of the Association, or employees or agents of any thereof, or against any manager retained by the Board or its officers, directors, employees or agents, or other Unit Owners or Occupants, for any loss or damage to any of the Property, or to a Unit or personal property therein; provided, that this waiver shall not apply to any such loss or damage due to intentional acts; provided further, this waiver is void if application of the same will result in loss of insurance coverage by the party suffering the damage.

## 7.5 Right of Entry.

a. By the Association. The Association, and any person authorized by the Association, may enter any Unit or any of the Limited Common Elements in case of any emergency or dangerous condition or situation originating in or threatening that Unit or any of the Limited Common Elements. The Association, and any person authorized by the Association, after reasonable notice to a Unit Owner or Occupant, may enter that Unit or any of the Limited Common Elements for the purposes of performing any of the Association's duties or obligations, or exercising any of the Association's powers under the Act, this Declaration, or the Bylaws with respect to that or any other Unit, any Limited Common Elements, or the Common Elements. Notwithstanding Section 7.4, the Association shall be responsible for any damage caused by the Association or its authorized person to the entered Unit, and the cost thereof shall be a Common Expense. All such entries shall be made and done so as to cause as little inconvenience as possible to the Unit Owner and Occupant of the entered Unit or any portion of the Limited Common Elements allocated to the Unit Owner.

12

BK1908 P1595

b.     By Unit Owners.  Each Unit Owner and Occupant shall allow other Unit Owners and Occupants and their representatives to enter his Unit, or Limited Common Elements allocated to his Unit, when reasonably necessary for the purpose of altering, maintaining, repairing or replacing the Unit or performing the duties and obligations required by the Act, this Declaration or the Bylaws, provided that requests for entry are made in advance and that such entry is at a time reasonably convenient to the Owner or Occupant whose Unit or Limited Common Element is to be entered.  In case of an emergency or dangerous condition or situation, such right of entry shall be immediate.   Notwithstanding Section 7.4, the person making such entry shall be responsible for repair of any damage caused by such person to the entered Unit or Limited Common Element unless such damage was caused by actions reasonably necessary to be taken to protect the Unit or the Condominium.

## ARTICLE VIII

### INSURANCE

### 8.1   Casualty Insurance.

The Association shall maintain casualty insurance upon the Property in the name of and the proceeds thereof shall be payable to, the Association, as Trustee for all Unit Owners and Security Holders as their interest may appear, and the proceeds shall be disbursed pursuant to the Act.  Such insurance shall be in an amount equal to not less than the full insurable value of the Property on a replacement value basis and shall insure against such risks and contain such provisions as the Board from time to time shall determine, but at a minimum shall conform in all respects to the requirements of the Act, and shall provide that, notwithstanding any provision thereof that gives the insurer an election to restore damage in lieu of making a cash settlement, such option shall not be exercisable if such restoration is prohibited pursuant to the Act. Such insurance shall include replacement value of all fixtures and items of personal property included within the Unit at the time of conveyance by Declarant to a third party, including, but not limited to, appliances, floor coverings, wall coverings, window accessories and light fixtures.

Any insurance purchased by the Association may, notwithstanding the provisions of this Paragraph 8.1, be subject to a deductible so that the total amount of insurance, after application of the deductible, shall be not less than 90% of the replacement cost ["cost" or "value"] of the insured Property at the time the insurance is purchased and at each renewal date, exclusive of land, excavations, foundations and other items normally excluded from property policies.   All such deductibles may be considered by the board as a Common Expense.   Should for any reason the insurance required to be carried in accordance with this Article VIII not be

13

reasonably available, which shall include availability at a reasonable cost, as determined by the Board, the Association promptly shall cause notice of that fact to be hand-delivered or sent prepaid by United States Mail to all Unit Owners, and upon the making of such decision, the Association shall be relieved of its obligations to carry such insurance until and only until such time as such insurance can be reasonably procured.

Due to the nature of the Condominium, which Condominium may consist of several levels within a building, portions of which building are not part of the Condominium, it shall expressly be permissible for the Association to join together with the Developer or with the owner of that portion of the property or building within which the Condominium is situate to purchase a single policy of insurance, insuring such building, including the Condominium, as long as the Association and each holder of a Security Interest is a named insured under such policy. In the event this election is exercised and approved by the Board, the appropriate premium cost of such policy as is allocated to the Condominium shall be a Common Expense of the Association. Prior to approving the purchase of a single building policy of insurance as allowed by this paragraph, the Board shall procure from the insurance agent or company a written breakdown of premium cost for such insurance, which breakdown shall specifically designate the percentage of the total premium cost attributable to the Condominium. The cost so attributable and designated shall be deemed the appropriate premium cost to be allocated to the Condominium as a Common Expense.

All policies of physical damage insurance shall contain waivers of subrogation and of any reduction of pro rata liability of the insurer as a result of any insurance carried by Unit Owners or of the invalidity arising from any acts of the insured or any Unit Owners.

## 8.2 Public Liability Insurance.

The Association shall maintain public liability insurance for the benefit of the Unit Owners, Occupants, the Association, the Board, the manager, if any, the Declarant, and their respective officers, directors, agents and employees, in such amounts and with such coverage as shall be determined by the Board; provided that the public liability insurance shall be for at least $1,000,000.00 per occurrence for death, bodily injury and property damage. Limits on liability may be altered from time to time by the Board. Said insurance shall contain a severability-of-interest endorsement precluding the insurer from denying liability because of negligent acts of any insured; insure all of such benefited parties against such liability arising out of or in connection with the use, ownership, maintenance or replacement of the Common Elements, including any properties to which the Association or the Unit Owners have a right of utilization, even though not a part of the Condominium; and insure the Association, the Board, the manager, if

14

any, and their respective officers, directors, agents and employees against such liability arising out of or in connection with the use, maintenance or replacement of the Units and/or Common Elements.

## 8.3  Other Insurance.

The Association may procure such other insurance, as it may from time to time deem appropriate to protect the Association or the Unit Owners.

## 8.4  Insurance Trustee.

The Board may engage, and pay as a Common Expense, any appropriate person to act as an Insurance Trustee to receive and disburse insurance proceeds upon such terms as the Board shall determine, consistent with the provisions of the Act and this Declaration.

Should the Board elect, as is allowed under Paragraph 8.1 of this Declaration, to authorize the purchase of a single policy of casualty insurance which policy shall insure against loss to the Condominium, as well as the additional portions of the building within which the Condominium is located, said policy shall be written to require that the proceeds be payable to an Insurance Trustee.

An Insurance Trustee shall be engaged to receive and disburse all insurance proceeds payable to or on behalf of the Association or Declarant, as to losses payable by virtue of damage or destruction to any portion of the building or buildings within which the Condominium is located, including the Condominium, if a single policy of casualty insurance is written for the entire building or buildings, including the Condominium.  The Insurance Trustee shall be selected by mutual agreement of the Board and Declarant; if no such agreement can be reached, within fifteen (15) days following the loss event, the Insurance Trustee shall consist of a committee consisting of one insurance trustee selected by the Board, one insurance trustee selected by the Declarant and a third selected by the two trustees above so named.  Each Insurance Trustee must be selected from the following categories:

(a)  a firm of certified public accountants licensed to practice in North Carolina;

(b)  a firm of lawyers licensed to practice law in the State of North Carolina;

(c)  an officer or director of a federally insured bank doing business in North Carolina; or

(d)  an insurance company licensed to do business in the State of North Carolina.

15

All decisions of the committee of trustees shall be made by majority vote of such committee.

All costs of the Insurance Trustee so selected shall be allocated between Declarant and the Association (as a Common Expense), and the costs shall be allocated based on the percentage of total insurance proceeds payable to the Association compared to the percentage payable to Declarant.

In the event the Condominium Property is damaged or destroyed and is not repaired or replaced, pursuant to Article IX below, the Insurance Trustee shall disburse any insurance proceeds received on account of such damage as follows: first, for repair or replacement (if repair and replacement is appropriate) of that part of levels one (1) through five (5) of the building necessary to make the building whole without the Condominium, and second, the remainder of the Condominium's proceeds to the Association for distribution to the Unit Owners as required by the Act in accordance with the formula as set out on Exhibit C.

## 8.5 Individual Policy For Unit Owners.

Each Unit Owner may obtain insurance, at his own expense, affording personal property, additional living expense, condominium assessment, personal liability, and any other coverage obtainable, to the extent and in the amount such Unit Owner deems necessary to protect his own interest; provided that any such insurance shall contain waivers pursuant to Section 7.4 and shall provide that it is without contribution as against the insurance purchased by the Association. If a casualty loss is sustained and there is a reduction in the amount of the proceeds that would otherwise be payable on the insurance purchased by the Association due to the proration of the insurance purchased by a Unit Owner under this Section, such Unit Owner shall be liable to the Association to the extent of such reduction and shall pay the amount of such reduction to the Association upon demand, and such Owner hereby assigns the proceeds of his insurance, to the extent of such reduction, to the Association.

## ARTICLE IX

## CASUALTY DAMAGE

If all or any part of the Property shall be damaged or destroyed, the same shall be repaired or replaced, and the proceeds of insurance shall be used and applied in accordance with the provisions of N.C.G.S. Section 47C-3-113, except that, except as required by law or by specific provision of this Declaration, the Condominium shall be repaired or replaced unless 100% of the Unit Owners of the Condominium elect not to rebuild or replace the damaged or destroyed portion of the Condominium.

16

Declarant specifically represents and agrees that it is the owner of fee simple marketable title to the property described on Exhibit A attached hereto, including all buildings and improvements now constructed or located thereon, including, but not limited to, the building within which the Property is located. Declarant hereby covenants and agrees for the benefit of itself and all owners of any Unit in the Condominium that it will maintain at all times a policy of all-risk or special causes hazard or casualty insurance insuring Declarant against such risks as might imperil said building, on a 100% replacement value basis. Should such insurance be placed independently of the casualty insurance on the Condominium as is permitted by Article VIII, proof of such insurance shall be currently maintained with the Board of the Association at all times, and such insurance policy shall contain a provision that such policy shall not be terminated without a minimum of thirty (30) days prior notice to the Association. The proceeds of such insurance shall be paid to an Insurance Trustee designated in accordance with Section 8.4 of this Declaration, for the benefit of Declarant, and to protect the interest of the Association and the reconstruction of the damaged facilities.

Declarant covenants and agrees for itself and all Owners of Units within the Condominium that, upon damage or destruction to the building or buildings (or any portion thereof) within which is located the Condominium that Declarant shall cause, as soon as is practicable, such damage to be repaired restored or replaced, as is appropriate, so as to allow and provide the structural integrity necessary for reconstruction or normal utilization of the Condominium, and to provide for all of the easement rights granted to the Unit Owners or Association in this Declaration. The Insurance Trustee shall disburse no funds for or on behalf of Declarant upon receipt of the proceeds of any casualty insurance if such disbursement would impair the ability of Declarant to cause reconstruction, repair or replacement to be performed in accordance with this provision.

Should Declarant fail or refuse to cause adequate reconstruction after receiving written demand to do so given by the Board of the Association, the Board of the Association may (but shall not be obligated to) cause such reconstruction to be performed, to the extent that such reconstruction is required to fulfill the support obligations imposed upon Declarant by this Declaration, and further as required to allow proper and appropriate utility service to be provided to the Condominium through and by utilizing utility easements granted by this Declaration. Such work may be performed by the Association, and all expenses incurred in performing such work, including reasonable and necessary administrative, architectural, engineering and legal costs shall be an expense of Declarant, and shall be charged to and may be collected from Declarant by action at law or in equity. All legal costs, including reasonable attorneys' fees, incurred by the Association in collecting its reimbursement as allowed by this

17

provision may be collected from Declarant as a cost of performing such work. The Board shall have the right to collect all insurance proceeds, paid or held by the Insurance Trustee on account of damage to the building or buildings, to be used for the purposes set forth in this Section.

## ARTICLE X

### CONDEMNATION

In the event of a taking by eminent domain, or by a conveyance in lieu thereof, of all or any part of the Property, the provisions of Section 47C-1-107 of the Act shall be applicable. In the event of condemnation, destruction or liquidation of the Condominium the Association will represent the Unit Owners in proceedings, negotiations, settlements or agreements. To accomplish this representation, each Unit Owner will appoint the Association as attorney-in-fact for this purpose.

## ARTICLE XI

### TERMINATION

The Condominium may be terminated only in strict compliance with Section 47C-2-118 of the Act.

## ARTICLE XII

### AMENDMENT

This Declaration may be amended only in strict compliance with the Act, including, without limitation, Section 47C-2-117. Any amendment not otherwise restricted by the votes entitled to be cast in any election of Directors of the Act may be adopted upon vote of 67% of the total number of the Association.

## ARTICLE XIII

### RIGHTS OF FIRST MORTGAGEE; V.A., FNMA, AND FHLMC PROVISIONS

The following provisions shall take precedence over all other provisions of this Declaration and the Bylaws:

### 13.1 Availability of Condominium Documents, Books, Records, and Financial Statements.

The Association shall, upon request and during normal business hours, make available for inspection by Unit Owners and the First Mortgagees and the insurers and guarantors of a First Mortgage on any Unit, current copies of the Declaration, the Bylaws, other rules and regulations governing the Condominium and the books, records, and financial statements of the Association. The Association shall

18

EX1558 P_171

provide an audited financial statement for the preceding fiscal year if requested in writing by a First Mortgagee or insurer or guarantor of a First Mortgage. The Association shall, upon request and during normal business hours, make available for inspection by prospective purchasers of Units, current copies of the Declaration, Bylaws, other rules and regulations governing the Condominium, and the most recent annual financial statement (if one is prepared).

## 13.2 Successor's Personal Obligation For Delinquent Assessments.

The personal obligation for assessments which are delinquent at the time of transfer of a Unit shall not pass to the successors in title or interest to said Unit unless said delinquent assessments are expressly assumed by them.

## 13.3 Rights of Action.

The Association and any aggrieved Unit Owner shall have a right of action against Unit Owners and any aggrieved Unit Owner shall have a right of action against the Association for failure to comply with the provisions of this Declaration, the Bylaws and the rules, regulations, and decisions of the Association made pursuant to authority granted to the Association in this Declaration and the Bylaws.

## 13.4 Management and Other Agreements.

Any management agreement between the Declarant or the Association and a professional manager, or any other agreement providing for services of the Developer, sponsor, builder or Declarant, shall be terminable by either party thereto without cause and without payment of a termination fee upon not more than thirty (30) days prior written notice and shall not exceed a term of three (3) years, subject to renewal by the consent of both parties.

## 13.5 Consent of First Mortgagees.

This Section 13.5 shall be effective only if, at the time this Section would apply, at least one Unit is subject to financing. Any decision to terminate the Condominium for reasons other than substantial destruction or condemnation of the Property shall require the prior written consent of eligible mortgage holders, in accordance with Section 13.6 hereof, representing 100% of the votes allocated to Units subject to First Mortgages held by eligible mortgage holders. Any amendment to the Declaration or Bylaws which changes any of the following shall require the prior written consent of all Unit Owners and of all eligible mortgage holders:

(a) Voting rights;

19

5K1918 P1972

(b)  Assessments, assessment liens or subordination of such liens;

(c)  Reserves for maintenance, repair, and replacement of Common Elements;

(d)  Responsibility for maintenance and repairs;

(e)  Re-allocation of interests in the Common Elements or Limited Common Elements or rights to their use;

(f)  Boundaries of any Unit;

(g)  Convertability of Units into Common Elements or Common Elements into Units;

(h)  Expansion or contraction of the Condominium or the addition, annexation or withdrawal of property to or from the Condominium, except that the exercise of any right of Declarant to expand or alter the Condominium that is included in this Declaration of Condominium will not be subject to a right of approval as granted herein;

(i)  Insurance or fidelity bonds;

(j)  Imposition of any restrictions on a Unit Owner's right to sell, transfer or otherwise convey his Unit;

(k)  A decision by the Association to establish self-management when professional management had been required previously by any eligible mortgage holder;

(l)  Restoration or repair of the Condominium (after damage or destruction or partial condemnation) in a manner other than that specified in this Declaration or the Bylaws;

(m) Any action to terminate the legal status of the Condominium after substantial damage or destruction or condemnation; or

(n)  Any provisions that expressly benefit First Mortgagees or insurers or guarantors of First Mortgages.

13.6 Consent of First Mortgagees or Unit Owners.

This Section 13.6 shall be effective only if, at the time this Section would apply, at least one Unit is subject to financing. Except with the unanimous consent of all First Mortgagees, the Association shall not be entitled to:

(a)  By act or omission, seek to abandon or terminate the Condominium;

20

Case 1:12-cv-00906-CCE-JLW   Document 12-2   Filed 09/10/12   Page 20 of 40

(b) Change the pro rata interest or obligations of any Unit for the purpose of:

> (i) Levying assessments or charges or allocating distributions of hazard insurance proceeds or condemnation awards, or
>
> (ii) Determining the pro rata 'share of ownership of each Unit in the Common Elements;

(c) Partition or subdivide any Unit (except this provision shall not restrict an individual Owner from doing the same in accordance with a provision of this Declaration or the Bylaws);

(d) By act or omission, seek to abandon, partition, subdivide, encumber, sell or transfer the Common Elements. (The granting of easements for public utilities or for other public purposes consistent with the intended use of the Common Elements shall not be deemed a transfer within the meaning of this clause); or

(e) Use hazard insurance proceeds for losses to any part of the Condominium (whether to Units or to Common Elements) for other than repair, replacement or reconstruction thereof.

13.7 Notice.

Each First Mortgagee and each insurer or guarantor of a First Mortgage, upon written request stating its mortgage held, insured or guaranteed, shall be entitled to timely written notification by the Association of (i) any proposed action which requires consent of a specified percentage of First Mortgagees; (ii) any condemnation or casualty loss that affects either a material portion of the Condominium or the Unit securing its First Mortgage; (iii) any 60 day delinquency in the payment of assessments or charges owed by the Unit Owner of the Unit on which the First Mortgagee held its First Mortgage or in the performance of any obligation under this Declaration or the Bylaws by said Unit Owner; or (iv) any lapse, cancellation or material modification of any insurance policy or fidelity bond maintained by the Association. Each First Mortgagee who has requested the Association to notify it of any proposed action that requires the consent of a specified percentage of eligible mortgage holders shall be considered an "eligible mortgage holder." With respect only to non-material amendments (which excludes items (a) to (n) of Section 13.5), such as for the correction of technical errors or for clarification, any First Mortgagee who receives a written request by the Association, or any Unit Owner, to approve an addition or amendment to the Declaration or Bylaws who does not deliver or post to the requesting party a negative response within thirty (30) days shall be deemed to have approved such request.

21

Case 1:12-cv-00906-CCE-JLW   Document 12-2   Filed 09/10/12   Page 21 of 40

## 13.8 Assessments.

Assessments shall be due and payable in monthly installments. As provided in Article VIII of the Bylaws, and, as legally required by Section 47C-3-115 of the Act, Declarant shall pay all accrued expenses of the Condominium until assessments are levied against the Units. An assessment shall be deemed levied against the Unit upon the giving of notice by the Board to a member of the Association who is a Unit Owner of that Unit. Unit Owners shall have no obligation to pay monthly assessments until an assessment is levied. Assessments will begin at such time as the Board elects but will be no later than sixty (60) days after the first Unit is conveyed. Prior to the levy of an assessment, Declarant shall pay all Common Expenses.

## 13.9 Rights of First Mortgagee; Insurance Proceeds or Condemnation Awards.

With respect to First Mortgages held by or for the benefit of any person, no provision of this Declaration or the Bylaws shall be deemed to give a Unit Owner, or any other party, priority over any rights of a First Mortgagee pursuant to its First Mortgage on said Unit Owner's Unit, in the case of a distribution to said Unit Owner of insurance proceeds or condemnation awards for losses to or a taking of Units and/or Common Elements.

### ARTICLE XIV

### GENERAL PROVISIONS

## 14.1 Conflict With The Act; Severability.

Should any of the terms, conditions, provisions, paragraphs, or clauses of this Declaration conflict with any provision of the Act, the provisions of the Act shall control unless the Act permits the Declaration to override the Act, in which event the Declaration shall control. The invalidity of any covenant, restriction, condition, limitation, provision, paragraph or clause of this Declaration, or of any part of the same or the application thereof to any person or circumstance, shall not impair or affect in any manner the validity, enforceability or affect the rest of this Declaration or the application of any such covenants, restriction, condition, limitation, provision, paragraph or clause to any other Person or circumstances.

## 14.2 Interpretation of Declaration.

Whenever appropriate singular may be read as plural, plural may be read as singular, and the masculine gender may be read as the feminine or neuter gender. Compound words beginning with the prefix "here" shall refer to this entire Declaration and not merely to the part in which they appear.

541890 PL875

## 14.3 Captions.

The captions herein are only for convenience and reference and do not define, limit or describe the scope of this Declaration, or the intent of any provision.

## 14.4 Exhibits.

Exhibits "A," "A-1," "B," "C" and "D" and any other Exhibits attached hereto are made a part hereof.

## 14.5 Number Of Units.

The maximum number of condominium units which may be submitted to this Declaration are sixty-eight (68), which units may be further subdivided as allowed by this Declaration.

## 14.6 Unit Description.

The eighteen (18) Units submitted in this Declaration to the Act are designated by entry level as follows: Level 6, Units 1, 2, 3A, 3B and 4 thru 17, and are located as shown on the Floor Plans. The particular boundaries of the Units are as shown on the Floor Plans. Said Floor Plans are recorded in Condominium Book 5, Pages 21, Forsyth County Registry.

## 14.7 Limited Common Areas.

The Limited Common Areas within the Condominium at the time of the recordation of this Declaration except as established by the Act, Section 47C-2-102, are as shown on the Floor Plans. Except as shown on the Floor Plans, no portion of the Common Elements shall be made a Limited Common Element except by unanimous consent of all of the Unit Owners.

## 14.8 Development Rights.

The Declarant reserves the following Special Declarant Rights:

(a) To complete any improvements on land described on Exhibit "A-1", and located on the fifth level of the building known as R.J. Reynolds Tobacco Company Building 256-2, to the extent that the same are not complete upon recordation of the Declaration;

(b) To maintain sales offices, management offices, signs advertising the Condominium and models within any Unit or within any Common Element;

(c) To utilize the easement through the Common Elements for the purpose of constructing or improving any portion of the Property or the Option Property;

23

PM_588 P1978

(d)  To remove any member of the Board appointed by Declarant or to otherwise select members of the Board during the Declarant Control Period, as set out in the Bylaws.

14.9 Shared Facilities.

(a) Parking.  A parking plan for the Condominium (the "Parking Plan") has been prepared by Randolph Cⲥ Henning, Architect, which Parking Plan is attached hereto as Exhibit "F." The parking spaces, and ingress and egress thereto, are located on level 2 of the building on land owned by Declarant.  Parking privileges shall be as follows:

(i)  Specific Assigned Interior Parking.  The Parking Plan designates eighteen (18) parking spaces within the building on level 2.  The right of access to and a permanent easement for the use of each of said parking spaces shall be conveyed by Declarant as easements appurtenant to the conveyance of certain Units within the Condominium, which conveyance shall specifically reference the Parking Plan.

(ii)  Additional Specific Assigned Exterior Parking. Declarant may, at the sole discretion of Declarant, designate additional parking spaces shown on the Parking Plan for the exclusive or nonexclusive use of Unit Owners within the Condominium, either as appurtenant to a designated Unit, or as a personal right to a Unit Owner.  Declarant shall have no obligation to assign or make available any of such designated parking places for the benefit of any Unit Owner or the Association.

(iii) Maintenance and Upkeep.  Maintenance, repair and upkeep of the Specific Assigned Interior Parking areas and the Specific Assigned Exterior Parking areas shall be performed by the Association, and shall be a Common Expense. Maintenance, repair and upkeep of any remaining parking spaces and all routes of ingress and egress to the parking areas shall be the responsibility of Declarant, and shall be performed at the expense of Declarant.

(b) Maintenance.  Declarant further warrants and represents that it will cause to be maintained in a clean and sightly condition all parking areas and common areas within the entrance levels of the Condominium and appurtenant easements, and that it will cause the stairwells required by applicable building and fire codes, the structural components of the building and the roof of the building, to be serviced and maintained in a good and operable condition at all times.  Any cost of maintenance of such stairwells, common areas within the entry levels, structural components of the building and the roof of the building may be charged to the Association in a percentage equal to the following fraction: (total gross square feet within the Condominium divided by total gross square feet within the building as a whole).  Declarant presently estimates that (a) the total gross square feet within the Condominium is 44,620 square feet

24

3(including the easement for parking area) and (b) the total gross square feet within the building as a whole is appraoximately 124,050 square feet. Expenses of maintenance of parking areas reserved exclusively for use of the Association or its members shall be borne by the Association as a Common Expense. Reasonable verification of any such expenses shall be provided by Declarant to the Association upon request of the Association. All such charges assessed against the Association may be charged as 'a Common Expense by the Association. To the extent that any portion of the Additional Property is added to the Condominium, the percentage of such expenses paid to the Association by such property shall likewise be computed based upon the procedure set out within this paragraph.

(c) <u>Support.</u> Declarant represents and warrants that it will cause to be maintained, at its own expense and without expense to the Association, all structural components of the building or buildings on levels other than those submitted to the Act necessary to maintain in safe condition the Condominium, and further agrees to maintain at its own expense any chutes, ducts, wiring or other portions of the building or buildings, or improvements located therein, which are reasonably necessary in order for the Condominium to be maintained in a good and safe condition, with full and adequate utility services thereto, and with full and adequate access to and from. This provision shall be binding on the successors and assigns of the Declarant, including any entity procuring title to the property described on Exhibit A, and shall remain in full force and effect until termination of the Condominium.

(d) <u>Easements.</u> Declarant does hereby establish and create for the benefit of Declarant and all Unit Owners and their tenants, their heirs, successors and assigns, nonexclusive easements in and to all structural members, footings, caissons, foundations, columns and beams, and other supporting components located within or constituting a part of any portion of the building or buildings within which the Condominium is located (including any replacements of any portion thereof), for the physical support of the Condominium and its Property and any facilities located therein.

(e) <u>Utilities.</u> Declarant does hereby establish and create for the benefit of Declarant and all Unit Owners and tenants within the Condominium, their heirs, successors and assigns, nonexclusive easements over and across all utility lines, meters, pipes, conduits, closets, shafts, chutes, ducts and all similar items and equipment used within or for the benefit of or in connection with the Condominium, no matter where located, including locations within any portion of the building or buildings within which the Condominium is located, or anywhere on the property described on Exhibit A, for utility services. This grant of easement shall include, without limitation, water, sewer, sprinkler systems, electric, gas, telephone, cable television, garbage disposal, air conditioning and heating, and shall include, without limitation, the right to connect with, maintain, repair and replace utility lines,

25

ducts, chutes and equipment. Owners, tenants and all other persons shall do nothing which interferes with or impairs utility services using such easements.

(f) **Building Protection.** No Person utilizing any portion of the Condominium, or any portion of the building or buildings within which the Condominium is located shall take any action which would result in any structural overload or lateral or seismic stress on any portion of the Condominium, or the building or buildings within which the Condominium is located, including, but not limited to, any structural member, floor, wall, partition or ceiling.

(g) **Ingress and Egress.** Declarant hereby creates and establishes, for the benefit of itself and all Unit Owners within the Condominium and for the benefit of the Association and all Persons having access to any portion of the Condominium by virtue of permission given by any Unit Owner or the Association, a nonexclusive easement for ingress and egress by people, materials and equipment over, on, across and through any portion of the property described on Exhibit A attached hereto (including the elevators in the building or buildings), to the extent that such property is available for utilization reasonably by any Person for purposes of ingress and egress to the Condominium and for the repair, maintenance, replacement, restoration and reconstruction of the Condominium or any portion thereof and the parking area. Said nonexclusive easement shall include all portions of the building or buildings within which the Condominium is located to the extent reasonably necessary to permit the maintenance, repair, replacement, restoration and reconstruction of any portion of the Condominium or to permit ingress and egress to the Condominium during any emergency.

(h) **Upkeep.** For the benefit of maintaining the value of the Condominium, Declarant shall, at its sole cost and expense, keep all portions of the property described on Exhibit A attached hereto, including all portions of the building or buildings within which the Condominium is located, with the exception of the Property, in good order and safe condition, and make all repairs therein and thereon, interior and exterior, structural and nonstructural, ordinary and extraordinary, necessary to keep same in good order and safe condition, howsoever a necessity or desirability thereof may occur, and whether or not necessitated by wear, tear, obsolescence or defects, blatant or otherwise; and Declarant further agrees that it shall not suffer or commit, and shall use all reasonable caution to prevent, waste to the same. The Association shall, at its sole cost and expense (subject to any conflicting provision of this Declaration), keep its Common Elements in good order and safe condition, and shall make or cause to be made all repairs therein and thereon, interior and exterior, structural and nonstructural, ordinary and extraordinary, necessary to keep same in good order and safe condition, howsoever the necessity or desirability thereof may occur, and whether or not necessitated by wear, tear, obsolescence

26

or defects, blatant or otherwise, and the Association shall further be required not to suffer or commit, and to use all reasonable precaution to prevent, waste to such Common Elements.

(i) Should Declarant fail or refuse to perform any obligation required of it in accordance with any provision of this Article XIV, including, but not limited to, the obligation to provide maintenance and support and upkeep to the Condominium, the Unit Owners and the Association, after written demand to do so is given by the Board of the Association to Declarant, the Board of the Association may (but shall not be obligated to) perform for its own benefit and the benefit of the Unit Owners any work, or fulfill any obligation, required of Declarant in order to fulfill such obligations of Declarant. Any such work, or any required action, may be performed by the Association, with all expenses incurred, including reasonable and necessary administrative, architectural, engineering and legal costs being an expense of Declarant, and such expenses shall be charged to and may be collected from Declarant by action at law or in equity. All legal costs, including reasonable attorneys' fees, incurred by the Association in collecting its reimbursement as allowed by this provision may be collected from Declarant as a cost of performing such work.

## 14.10    Calculation of Square Footage.

As used within this Declaration, square footage assigned to each Unit is designated "gross", and all formulas utilizing a percentage of square footage within a Unit compared to a percentage of the entire Condominium shall be based upon a ratio of such gross square footage to the total gross square footage within the Condominium.   On Exhibit E attached hereto is an analysis of the gross square footage of each of the residential Units designated by number, and the percentage of gross square footage of Units within the Additional Property if Declarant exercises its right to include all of the Additional Property as a part of the Condominium. Specifically, but not by way of limitation, the allocations made in accordance with the provisions of Article III, Paragraph 3.1 are made utilizing the gross square footage figures set out on Exhibit E.    Should any portion of the Additional Property be submitted to the Condominium, the square footage set out on Exhibit E and assigned to the Additional Property shall constitute the maximum amount of gross square footage that may be assigned Units within the Additional Property for all purposes of determining allocated interests as required by Article III of this Declaration and the Act.

27

# ARTICLE XV

## ADDITIONAL REAL ESTATE

### 15.1 Declarant's Right to Add Additional Real Estate.

Declarant, on behalf of itself and Piedmont Institute for Research and Technology II, LLC, a North Carolina limited liability company, expressly reserves the right to add any portion of the property described on Exhibit A-1, to the Condominium (such real estate herein referred to as the "Additional Property"), and as limited by Paragraph 1.19(e) of this Declaration. All or any part of the Additional Property may be added to the Condominium at different times, and no assurances are made in regard to the order in which portions may be added. Declarant shall have no duty or obligation of any kind to add any or all of the Additional Property to the Condominium. The method of adding the Additional Property to the Condominium shall be pursuant to the Act. Declarant's right to add to the Condominium all or any part of the Additional Property must be exercised within seven (7) years following the recordation of this Declaration. In addition (i) all improvements with respect to Additional Property shall be substantially complete prior to submission to Condominium, (ii) any such submission shall be made pursuant to a supplemental declaration signed by Declarant and recorded, and (iii) the improvements within the Additional Property will be substantially consistent with improvements in the Condominium.

PROVIDED, HOWEVER, so long as the lien of Central Carolina Bank and Trust Company described in Article XVI of this Declaration remains in effect with respect to any portion of the property described on EXHIBIT A, no addition of Additional Property to the Condominium shall be made without the express consent of Central Carolina Bank and Trust Company, which consent shall not be unreasonably withheld or delayed.

### 15.2 Maximum Number of Additional Units.

The maximum number of additional Units within the Additional Property that may be created is twenty-two (22) located on levels 4 and 5 (levels 2 and 3 above the Chestnut Street grade) of the building (known as the 256-2 Building) adjoining the building within which the Condominium is located. Declarant may submit all of a level as a single Unit or may submit a level into Units not to exceed in total number of twenty-two on all levels.

### 15.3 Use.

The Additional Property may be used for residential purposes only. The amendment to this Declaration creating a condominium within the Additional Property shall designate that each Unit is restricted to residential purposes.

28

## 15.4 Applicability of Restrictions.

All restrictions in this Declaration and the Bylaws affecting Units will apply to any and all Units that may be created within the Additional Property.

## 15.5 Unit Allocations.

The allocated interest in the Condominium of any Additional Property shall be computed in accordance with the provisions of Article III hereinbefore, and shall be specifically designated on the amendment to this Declaration when all or any portion of the Additional Property is submitted to the Act. Should any Unit on any level on the Additional Property be subdivided, the specific allocated interest assigned to each subdivided Unit shall be specified in the document subjecting the Additional Property to the Act.

### ARTICLE XVI

### JOINDER

Central Carolina Bank and Trust Company (the "Bank") executes this Declaration of Condominium for the sole purpose of subordinating its Deeds of Trust and Assignments of Leases, Rents and Profits recorded in Book 1932, Page 2533 and Book 1957, Page 1251, and Book 1932, Page 2538 and Book 1957, Page 1268, respectively, Forsyth County Registry including the lien imposed by any Uniform Commercial Code Financing Statement or other security interest (collectively the "Deed of Trust") to the provisions of this Declaration of Condominium, and by execution of this Declaration of Condominium, the Bank does hereby expressly subordinate all of its right, title and interest in the Deed of Trust and other security instruments above referenced to the provisions of this Declaration of Condominium, including specifically, but not by way of limitation, the obligation of any owner of the property described on Exhibit A, including the Bank, upon acquisition of title by foreclosure or deed in lieu of foreclosure, and including any assignee or other holder of any rights held by the Bank under said Deed of Trust or other security agreement, to comply with all requirements contained in Article XIV. Except for the subordination and recognition of rights granted by this Article XVI, the lien priority, and all the provisions and terms of the Bank's Deed of Trust (with other security agreements) shall remain in full force and effect as though this Declaration of Condominium were not executed and recorded.

PROVIDED, HOWEVER, the lien of the Association for assessments established in Article VI of this Declaration shall remain subordinate to the lien of the Bank hereinabove described.

29

## ARTICLE XVII

### INCORPORATION

The Association may elect, upon vote of its Board, to incorporate, and if such Association is incorporated, the corporation shall be deemed the Association for purposes of this Declaration.

IN WITNESS WHEREOF, the undersigned has executed this Declaration as of the day and year first above written.

PIEDMONT INSTITUTE FOR RESEARCH AND TECHNOLOGY, LLC (SEAL)

By: _____ (SEAL)
W. David Shannon, Manager

CENTRAL CAROLINA BANK AND TRUST COMPANY

ATTEST: _____  By: _____
          _____                    1st v./c        President
          _____ Secretary

[CORPORATE SEAL]

STATE OF NORTH CAROLINA - COUNTY OF Forsyth

I, a Notary Public of the County and State aforesaid, certify that W. David Shannon personally appeared before me this day and acknowledged the execution of the foregoing instrument, all in his capacity as Manager of, and in the name and for and on behalf of Piedmont Institute for Research and Technology, LLC, a North Carolina limited liability company, organized under the laws of the State of North Carolina. Witness my hand and official stamp or seal, this ____19____ · day of ___December_____, 1997.

_____
Notary Public

My Commission expires: Nov. 9, 2001



MARY ANN CRUMP
NOTARY PUBLIC
FORSYTH COUNTY, NC
My Commission Expires 11-9-01

30

Case 1:12-cv-00906-CCE-JLW   Document 12-2   Filed 09/10/12   Page 30 of 40

STATE OF NORTH CAROLINA - COUNTY OF FORSYTH

$Davie$

I, the undersigned, a Notary Public of ~~the~~ County and State aforesaid, certify that ___*Frank H. Bahnson*___ personally came before me this day and acknowledged that ___he is *Asst* Secretary of Central Carolina Bank, a North Carolina banking corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its *or Vice* President, sealed with its corporate seal and attested by *him* self as its *Asst* Secretary. Witness my hand and official seal, this the *18* day of *December* , 1997.

OFFICIAL SEAL
Notary Public, North Carolina
COUNTY OF DAVIE
ROBERTA A. FRY
My Commission Expires Aug. 24, 2002

Notary Public

My commission expires: *Aug 24, 2002*

STATE OF NC - FORSYTH CO
The Foregoing certificate of Mary Ann Crump +
Roberta A. Fry ; N.P.s
                                               NP(s)
is certified to be correct this the 5th day of January, 19 98
Dickie C. Wood, Register of Deeds by: _____ Asst/Deputy

31

Case 1:12-cv-00906-CCE-JLW   Document 12-2   Filed 09/10/12   Page 31 of 40

EXHIBIT A

BEING a tract or parcel of land located in Winston Township, Forsyth County, North Carolina and being more particularly described as follows:

BEGINNING at a railroad spike located at the intersection of the northern right of way line of First Street (S.R. 3924) and in the eastern right of way line of Chestnut Street; running thence from said beginning point along the eastern right of way line of Chestnut Street North 06° 33' 20" West 96.63 feet to a corner of a building; thence leaving the eastern right of way line of Chestnut Street and with the northern line of the building North 83° 30' 26" East 114.99 feet to a corner of a building; thence North 06° 29' 43" West 28.52 feet to a corner of an adjacent building; thence with the south line of said adjacent building or the center line of a party wall between buildings 256-9 and 256-2 North 83° 26' 12" East 143.38 feet to a point in concrete; thence South 07° 02' 36" East 118.53 feet to an existing iron pipe in the northern right of way line of First Street (S.R. 3924); thence along the northern right of way line of First Street (S.R. 3924) South 82° 00' 23" West 259.49 feet to a railroad spike in the eastern right of way line of Chestnut Street, the point and place of beginning, containing 0.64866 acres, more or less, by coordinate computation in accordance with a survey prepared for Piedmont Institute for Research and Technology, L.L.C. by Thomas A. Riccio, Registered Land Surveyor, L-2815 dated April 17, 1996 (Drawing Number 96105).

Together with all privileges, hereditaments, easements and appurtenances thereto belonging, specifically including but not limited to a perpetual non-exclusive right and easement for (i) ingress, egress and regress and (ii) encroachment/infringement over and across the following described property:

BEGINNING at a bolt in asphalt in the northern right of way line of First Street (S.R. 3924) and in the right of way of Patterson Avenue; running thence from said beginning point along the northern right of way line of First Street (S.R. 3924) South 82° 03' 43" West 20.17 feet to an existing iron pipe in the southeastern corner of the above described tract or parcel of land; thence with the east line of said property North 07° 02' 36" West 118.53 feet to a point; thence South 83° 26' 12" West 20.28 feet to a point; thence North 06° 29' 12" West 119.79 feet to the corner of a building; thence North 83° 26' 12" East 39.24 feet to a point in the right of way of Patterson Avenue; thence along a line within Patterson Avenue South 07° 03' 13" West 119.80 feet to a PK Nail set; thence continuing within the right of way of Patterson Avenue South 07° 03' 13" West 118.05 feet to a bolt in asphalt in the northern right of way line of First Street (S.R. 3924) the point and place of beginning containing 0.16427 acres, more or less by coordinate computation all in accordance with a survey prepared for Piedmont Institute for Research and Technology, L.L.C. by Thomas A. Riccio, Registered Land Surveyor, L-2815 dated April 17, 1996 (Drawing Number 96105).

EXHIBIT A-1

BEGINNING AT A POINT located in the east right-of-way line of Chestnut Street and at the northwest corner of the property conveyed to Piedmont Institute for Research and Technology LLC by deed dated May 17, 1996 and recorded in Book 1901 at Page 2322 of the Forsyth Public Registry; and running thence from said point of beginning and with the east right-of-way line of Chestnut Street North 07° 08' 48" West 148.36 feet to a point; running thence with the south boundary line of the PIRT III Property North 83° 28' 52" East 239.79 feet to a point and North 83° 26' 12" East 19.12 feet to a point in the west right-of-way line of Patterson Avenue; running thence with said right-of-way line of Patterson Avenue South 07° 02' 36" East 119.80 feet to a point, the northeast corner of the property described in the deed recorded in Book 1901 at Page 2322 of the Forsyth Public Registry; running thence with the boundary lines of said property the three following courses and distances: (1) South 83° 26' 12" West 143.38 feet to a point; (2) South 06° 29' 43" East 28.52 feet to a point; and (3) South 83° 30' 26" West 114.99 feet to the point and place of BEGINNING and containing 0.78743 acres, more or less, as taken from a plat of survey prepared by Thomas A. Riccio and Associates dated January 24, 1997 and revised February 21, 1997 (Drawing Number 97031).

TOGETHER WITH all right, title and interest of the Grantor in and to that certain right and easement described in the deed to Piedmont Institute for Research and Technology LLC recorded in Book 1901 at Page 2322 of the Forsyth Public Registry.

BK1980 P1988



LOFTS AT ALBERT HALL CONDOMINIUMS



Page 1 of 3

ALBERT HALL - PHASE ONE
(BUILDING 256-9)

STRUCTURAL CEILING
ELEVATION 963.52
FINISHED CEILING
ELEVATION 962.77

FINISHED FLOOR
ELEVATION 950.27
STRUCTURAL FLOOR
ELEVATION 949.77

LOFTS AT ALBERT HALL
STRUCTURAL ENVELOPE

Page 2 of 3



BK1986 P1988

Case 1:12-cv-00906-CCE-JLW   Document 12-2   Filed 09/10/12   Page 36 of 40

## EXHIBIT C
### ALLOCATED INTEREST
### (PERCENTAGE OF UNDIVIDED INTEREST)

| UNIT NO. | PERCENTAGE OF UNDIVIDED INTEREST |
|---|---|
| 1 | 4.22% |
| 2 | 4.87% |
| 3A | 4.96% |
| 3B | 5.44% |
| 4 | 10.96% |
| 5 | 7.27% |
| 6 | 3.59% |
| 7 | 5.44% |
| 8 | 5.44% |
| 9 | 5.40% |
| 10 | 5.60% |
| 11 | 6.77% |
| 12 | 7.48% |
| 13 | 3.42% |
| 14 | 3.42% |
| 15 | 5.17% |
| 16 | 5.17% |
| 17 | 5.38% |
|  | 100.00% |

BK1980 P1992

## EXHIBIT D
## LIENS, DEFECTS AND ENCUMBRANCES

1.    Utility easements of record.

2.    Infringement of canopy and concrete dock as shown on survey dated April 17, 1996 by
      Thomas A. Riccio, Registered Land Surveyor.

3.    Party Wall Agreement by and between the County of Forsyth and the Winston-Salem
      Downtown Development Corporation recorded in Book 1901, Page 2314, Forsyth County
      Registry.

Case 1:12-cv-00906-CCE-JLW   Document 12-2   Filed 09/10/12   Page 38 of 40

| RESIDENTIAL UNITS UNIT NO. | GROSS SQUARE FOOTAGE OF UNIT | PERCENTAGE OF UNDIVIDED INTEREST (If Additional Property is added) |
|---|---|---|
| 1 | 751 | 2.01% |
| 2 | 868 | 2.32% |
| 3A | 883 | 2.36% |
| 3B | 967 | 2.59% |
| 4 | 1,949 | 5.22% |
| 5 | 1,294 | 3.46% |
| 6 | 639 | 1.71% |
| 7 | 967 | 2.59% |
| 8 | 967 | 2.59% |
| 9 | 961 | 2.57% |
| 10 | 997 | 2.67% |
| 11 | 1,204 | 3.22% |
| 12 | 1,330 | 3.56% |
| 13 | 608 | 1.63% |
| 14 | 608 | 1.63% |
| 15 | 919 | 2.46% |
| 16 | 919 | 2.46% |
| 17 | 957 | 2.46% |
| | 17,788 | 47.61% |

| ADDITIONAL PROPERTY UNIT NO. | GROSS SQUARE FOOTAGE OF UNIT | PERCENTAGE OF UNDIVIDED INTEREST (If Additional Property is added) |
|---|---|---|
| 18 | 950 | 2.54% |
| 19 | 950 | 2.54% |
| 20 | 1,575 | 4.22% |
| 21 | 950 | 2.54% |
| 22 | 675 | 1.81% |
| 23 | 675 | 1.81% |
| 24 | 1,175 | 3.13% |
| 25 | 1,175 | 3.13% |
| 26 | 675 | 1.81% |
| 27 | 675 | 1.81% |
| 28 | 950 | 2.54% |
| 29 | 1,250 | 3.35% |
| 30 | 925 | 2.48% |
| 31 | 1,000 | 2.68% |
| 32 | 975 | 2.61% |
| 33 | 1.050 | 2.81% |
| 34 | 1,000 | 2.68% |
| 35 | 1,000 | 2.68% |
| 36 | 1.000 | 2.68% |
| 37 | 950 | 2.54% |
| | 19,575 | 52.39% |

BK 1993 PG 592



LOFTS AT ALBERT HALL CONDOMINIUMS
PARKING LAYOUT

SUPPORTING STRUCTURE
(COLUMNS AND PIERS)
ARE SHOWN TYPICALLY AS
☐ PIERS
O COLUMNS
WALLS PROVIDE OTHER SUPPORT
FROM LEVEL 1 TO ROOF
(PIERS ARE LOCATED ONLY
ON LEVELS 1 & 2)