| | |
|---|---|
| THE LOFTS AT ALBERT HALL CONDOMINIUM ASSOCIATION, INC AND JEFFREY L. SMITH.<br><br>**Plaintiffs,**<br><br>vs.<br><br>VINTAGE OAKS II, A CALIFORNIA LIMITED PARTNERSHIP, BARTON/BOESPFLUG II, A CALIFORNIA LIMITED PARTNERSHIP, AND BULKLEY INVESTORS<br><br>**Defendants.** | **BRIEF IN SUPPORT OF PLAINTIFFS' RULE 12(c) MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |

## PLAINTIFFS' BRIEF IN SUPPORT OF RULE 12(c) MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

### MATTER BEFORE THE COURT

Now before the Court is Plaintiffs' motion for partial Judgment on the Pleadings on their Fifth Claim for Relief. This matter, filed June 28, 2012, was removed to this Court by Defendants on diversity grounds on August 20, 2012 (ECF No. 10).

Plaintiffs' action is based upon the seemingly unexceptionable proposition that the owners of a building are responsible for repairing and replacing its roof when that becomes necessary. Defendants' sole asserted basis for avoiding that responsibility has now twice been submitted to this Court for consideration and has twice been rejected. Public records necessary to resolve one of Plaintiffs' claims for relief on the pleadings have been made of record by Defendants and referenced by them in their Answer and

Third Party Complaint. Accordingly, the matter is ripe for partial adjudication on the Pleadings, pursuant to Rule 12(c), Federal Rules of Civil Procedure.

**PROCEDURAL HISTORY AND STATEMENT OF THE FACTS**

Albert Hall is a six story building located at 101 N. Chestnut Street in Winston Salem, North Carolina. (ECF No. 12-2, § 1.16). The interior of the top floor of Albert Hall is occupied by the Lofts at Albert Hall Condominium ("the Condominium"). Plaintiffs are the condominium association for the Condominium ("the Association") and Jeffery Smith, one of the condominium unit owners. (ECF No. 13 ¶ 1-2; ECF No. 29 ¶ 1-2). The Defendants are the owners of the remainder of Albert Hall, the land upon which it is located and all easements and rights of record appurtenant thereto. (ECF No. 12-1; 12-2; 12-3).

The gravamen of both Plaintiffs' original state court complaint and the amended complaint filed in this Court (ECF No. 4, 13) is that the roof of Albert Hall is worn out, leaking and in dire need of replacement, that under the terms of the Declaration of Condominium of the Lofts at Albert Hall Condominium ((ECF No. 12-1, hereafter referred to as "The Declaration"), Defendants are required to replace it and that Defendants have refused to do so for no legally sufficient or comprehensible reason other than to force Plaintiffs to incur the expense of seeking the entry of a Declaratory Judgment requiring them to do so. Defendants removed this case to this Court on August 20, 2012 (ECF No. 1) on diversity grounds and moved to dismiss the Complaint for failure to state a claim on September 10, 2012 (ECF No. 11). Plaintiffs' filed their Amended Complaint (ECF No. 13) on September 26, 2012 and Defendants again moved to dismiss for failure to state a claim on October 24, 2012 (ECF No. 15).

The asserted basis for both of Defendants' motions to dismiss for failure to state a claim was that by some unidentified legal mechanism, the definition of the word "Declarant" in the North Carolina Condominium Act at N.C. Gen. Stat. 47C-1-103(9) superseded the definition of the word "Declarant" at section 1.9 of the Declaration.

According to Defendants, this had the result of making Piedmont Institute for Research and Technology, LLC ("PIRT"), the company from whom Defendants purchased Albert Hall in 2000, the party actually responsible for replacing the roof of Albert Hall. (ECF No. 15; ECF No. 16, pp. 5-9.)

On February 21, 2013, this Court entered an order denying Defendants' Rule 12(b)(6) motion to dismiss. (ECF No. 27). Undaunted, Defendants, on March 8, 2013, filed an Answer and a Third Party Complaint against PIRT and David Shannon ("Shannon") who was alleged to have been the owner of PIRT. (ECF No. 29). Reasserting the theory necessarily rejected by this Court in denying Defendants' 12(b)(6) motion, Defendants' Third Party Compliant alleged that PIRT and/or Shannon, not Defendants, were responsible for the cost of replacing Albert Hall's roof. Based upon that theory, Defendants sought indemnification or, more remarkably still, damages from PIRT and Shannon for breach of duties to Defendants under the Declaration, Defendants' insistence that they were not parties to the Declaration notwithstanding. (See ECF No. 29, First, ; ECF No. 44, pp. 6-11.)

PIRT and Shannon moved to dismiss the Third Party Complaint on May 13, 2013 (ECF No. 37). On July 15, 2013, this Court entered an Order and opinion granting PIRT and Shannon's motion to dismiss that explicitly rejected Defendants' theory (ECF No. 48). Defendants then attempted to take an uncertified interlocutory appeal to the United States Court of Appeals for the Fourth Circuit asserting the substantial right doctrine applicable to appeals to the appellate division of the North Carolina General Court of Justice. (ECF No. 52.) That appeal was dismissed on September 27, 2013. Most recently, on March 14, 2014, Defendants moved to amend to add a counterclaim against the Association for expenses they claim they are owed under the Declaration (ECF No. 67). Plaintiffs filed their opposition to that motion on April 7, 2014 (ECF No. 69) and it is now pending before this Court.

3

# ARGUMENT

## I. STANDARD OF REVIEW

Fed. R. Civ. Proc. Rule 12(c) empowers the Court to "dispose of cases when the material facts are not in dispute and the court can judge the case on its merits by considering the pleadings and any attachments to the pleadings and materials referenced, which are incorporated into the pleadings by Rule 10(c)." *Preston v. Leake*, 629 F. Supp. 2d 517, 521 (E.D.N.C. 2009). A Rule 12(c) motion "is analyzed under the same standard as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss." *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 723 (M.D.N.C. 2012). As with a Rule 12(b)(6) motion, the Court takes the factual allegations of the non-movant's pleadings as true and draws all reasonable factual inferences in the non-movant's favor, *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Brewer v. Jefferson-Pilot Standard Life Ins. Co.*, 333 F. Supp. 2d 433, 436 (M.D.N.C. 2004), but it "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

However, unlike a Rule 12(b)(6) motion, a court considering a motion for judgment on the pleadings may consider the answer and documents attached to, referenced in and/or incorporated by reference into the answer, without converting the motion to one for summary judgment. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Parks v. Alteon, Inc.*, 161 F. Supp. 2d 645, 649, n. 1 (M.D.N.C. 2001). Similarly, "[c]onversion to summary judgment is not required when the court considers documents of which it may take judicial notice." *Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 732 (E.D.N.C. 2008). The Court may thus reach the merits of an affirmative defense on a motion for judgment on the pleadings if all the facts necessary to dispose of the defense appear in the pleadings and attached documents. *See Demetry v. Lasko Products, Inc.*,

284 F. App'x 14, 15 (4th Cir. 2008); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

## II. PLAINTIFFS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS ON THEIR FIFTH CLAIM FOR RELIEF

Plaintiffs' Fifth Claim for Relief seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 determining the rights and obligations of the parties with respect to the repair, maintenance and replacement of the roof of Albert Hall. Complaint ¶ 46.

> A proceeding in the nature of declaratory judgment is . . . particularly appropriate where the basic issue underlying the Plaintiff's action is the interpretation or construction of a contract, and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate as in this case[.]

*Cherry, Bekaert & Holland v. Downs*, 640 F. Supp. 1096, 1102 (W.D.N.C. 1986).

Plaintiffs are entitled to judgment on the pleadings because their Fifth Claim for Relief does not require the resolution of any factual disputes. Defendants admit that their ownership interest is memorialized by the Deeds. Answer ¶ 6. Defendants admit that they are bound by the Declaration. ¶ 10, 29. Defendants admit that the roof has experienced leaks, affecting lower levels of Albert Hall . ¶ 12. The only legal theories advanced by Defendants' in avoidance of their obligations under the Declaration with regard to the roof are stated in their First, Second and Fourth affirmative defenses. As a matter of law, these theories present no bar to entry of judgment on Plaintiffs' Fifth Claim for Relief.

### A. AS A MATTER OF LAW, DEFENDANTS SUCCEEDED TO PIRT'S OBLIGATIONS UNDER THE DECLARATION.

Defendants admit at Answer ¶ 7 that their ownership interest in Albert Hall is as described in the three deeds which they filed in this action as ECF No. 12-3. The most recent of the three, a "corrective deed" recorded with the Forsyth County Register of Deeds at deed book 2756, page 333, establishes that Defendants own the property described in Exhibit A of the deed as tenants in common, subject to easements, rights of

5

way and restrictions of record. (These deeds are collectively referred to as "the Deeds." The 2007 corrective deed recorded at book 2756, page 333 is hereafter referred to as "the Deed" or "Defendants' Deed.") Pursuant to Exhibit A of Defendants' Deed, Defendants took title "[s]ubject . . . to the terms and provisions" of the Declaration. Section 5.8 of the Declaration states:

> Declarant and each Unit Owner and Occupant shall be subject to all restrictions, conditions and covenants of this Declaration, and all such restrictions, conditions and covenants shall be deemed covenants running with the land or real estate, and shall bind every person having any interest in the property, and shall inure to the benefit of every Unit Owner and their respective heirs, successors and assigns.

Despite this, Defendants have asserted in their the motion to dismiss the First Amended Complaint for failure to state a claim (ECF No. 15), their First, Second and Fourth Affirmative Defenses and in their third party claim against PIRT and Shannon (ECF No. 29) that they did not succeed to PIRT's responsibilities to the Association and its members under the Declaration because they did not obtain "special declarant rights" when they purchased Albert Hall from PIRT.

More specifically, Defendants' contend that because they did not acquire "special declarant rights," they are not "declarants" as that term is used in the North Carolina Condominium Act, N.C. Gen. Stat. § 47C-1-103(9) and therefore they cannot be "declarants" under the Declaration even though the Declaration defines and uses the word "declarant" differently from the statute. This theory has been fully briefed (ECF No. 12, 16, 18, 23, 44, 45), fully considered by the Court and twice rejected. (ECF No 27, 47). In its Order of July 13, 2013 (ECF No. 47), this Court stated as follows:

> Defendants/third-party plaintiffs state that PIRT never transferred its Special Declarant Rights in the manner required by the Uniform Act, and PIRT does not argue to the contrary. PIRT contends, however, that maintaining the roof is not a Special Declarant Right and that when it transferred its ownership interest in the property to Defendants/third-party plaintiffs, it also transferred any obligation it had to maintain the roof.

6

> This argument has merit. Under the Act, Special Declarant Rights are very limited, and they do not include maintaining the roof. See N.C.G.S. § 47C-1-103(23). Thus, the fact that PIRT never transferred its Special Declarant Rights is not relevant to this case.

ECF No. 47, p. 2. For this reason, this Court entered judgment granting PIRT and Shannon's motion to dismiss with prejudice. (ECF No. 48).

In North Carolina, the interpretation of a contract, deed or other written instrument is a question of law. *Stephens Co. v. Lisk*, 240 N.C. 289, 292, 82 S.E.2d 99, 101 (1954); *Harris v. Ray Johnson Const. Co., Inc.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000). This Court's ruling at ECF No. 48 that PIRT transferred any obligation it had to maintain the roof of Albert Hall to Defendants when it transferred its ownership interest in Albert Hall to them is therefore the law of the case. "Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Columbus-America Discovery Grp. v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 304 (4th Cir. 2000) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).

In federal cases, the law of the case doctrine applies to both appellate decisions on remand and to interlocutory decisions of a district court in the same matter. *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 550 (D. Md. 2013). "While the doctrine is discretionary . . . 'law of the case' applies to those situations where a court refuses to reconsider its own decision rendered at an earlier stage of the litigation absent clear and convincing reasons to reexamine the prior ruling." *Baron Fin. Corp. v. Natanzon*, 509 F. Supp. 2d 501, 520 (D. Md. 2007). "As noted by Wright & Miller, 'law-of-the-case principles ... are a matter of practice that rests on good sense and the desire to protect both the court and parties against the burdens of repeated reargument by indefatigable diehards.'" *Washington Gas Light Co. v. Prince George's Cnty. Council*, 784 F.Supp.2d 565, 571 (D.Md. 2011) (citing 18B Wright & Miller, Federal Practice & Procedure § 4478 (2d ed. 2010)).

7

Defendants have shown themselves nothing if not indefatigable in their efforts to delay the day they can no longer avoid their duty to Plaintiffs and the Condominium. They have, however, made no argument or showing indicating the existence of a clear or convincing reason why the rule of law that compelled the dismissal of their third party action should not also compel the entry of a judicial declaration in Plaintiffs' favor.

### B. THE DECLARATION MAKES CLEAR THAT ANY CONTENTION THAT PLAINTIFFS ARE RESPONSIBLE FOR THE COST OF REPLACING THE ROOF IS BASELESS

In ¶ 8 of their First Affirmative Defense, Defendants assert, in the alternative, that the duty to replace the roof of Albert Hall has somehow devolved onto the Association and/or the Condominium unit owners. To the extent that this assertion is based upon Defendants' contentions regarding their failure to acquire "special declarant rights," that contention is resolved under the law of the case doctrine. However, to the extent it can be construed as a contention that the Association and/or the unit owners have some ownership interest in the roof, the terms of the Declaration exclude this possibility.

Section 1.16 of the Declaration defines "the Property," a term used throughout the Declaration, as

> [t]he real estate submitted to the [North Carolina Condominium] Act by this Declaration of Condominium, being all of the sixth level (top floor) of the building known as "Albert Hall" (there being a total of six levels in such building) and an adjoining elevator tower and lobby area (located on land described on attached Exhibit A-2) as more fully described in the Floor Plans and including all easements and appurtenances belonging to or in any way pertaining to said real estate, and further including any real estate submitted to the Act by amendment to this Declaration.

The exhibits referenced in Section 1.16 make it clear that, with the exception of the Condominium's elevator tower, parking and storage areas and outdoor decks appurtenant to some units, the boundaries of "the Property" are the interior finished ceilings, floors and walls of Albert Hall's sixth floor. Per section 1.12, the "Floor Plans" referenced in Section 1.16 are attached to the Declaration as Exhibit B. Exhibit B, p. 1

8

indicates the upper and lower boundaries of the condominium are the elevations of the "finished ceiling" and "finished floor," which are distinguished from the "structural ceiling" and "structural floor" identified on p. 2 of Exhibit B. Likewise, as in subsection 14.9(h), Article IX, repeatedly refers to Albert Hall as "the building *within which* the Property is located,"

No provision of the Declaration, by contrast, can reasonably be construed as indicating that the roof, the exterior, or any structural members that are not physically located within the interior space of the sixth floor of Albert Hall are owned by anyone other than Defendants.

### C. AS A MATTER OF LAW, DEFENDANTS' DUTIES UNDER THE DECLARATION INCLUDE THE DUTY TO REPLACE THE ROOF IF NECESSARY

"Under North Carolina law, the most fundamental principle of contract construction is that the courts must give effect to the plain and unambiguous language of a contract." *Archer Daniels Midland Co. v. Brunswick County*, 129 Fed.Appx. 16, 29 (4th Cir. 2005) [citation and internal quotes omitted]. "With all contracts, the goal of construction is to arrive at the intent of the parties when the contract was issued. The intent of the parties may be derived from the language in the contract." *Mayo v. North Carolina State University*, 168 N.C.App. 503, 508, 608 S.E.2d 116, 120 *aff'd*, 360 N.C. 52, 619 S.E.2d 502 (2005). (internal citation omitted).

> It is the general law of contracts that the purpose of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument. When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court and the court cannot look beyond the terms of the contract to determine the intentions of the parties.

*Lynn v. Lynn,* 202 N.C.App. 423, 431, 689 S.E.2d 198, 205 (2010) (citations and internal quotation marks omitted). "In those cases, the court's only duty is to determine the legal effect of the language used and to enforce the agreement as written" *Computer Sales*

9

*International v. Forsyth Memorial Hospital*, 112 N.C.App. 633, 634-35, 436 S.E.2d 263, 264-65 (1993) *disc. review denied*, 335 N.C. 768, 442 S.E.2d 513 (1994).

*Whether* contractual language is unambiguous is also a question of law. *Id.* An ambiguity exists only when, "in the opinion of the court, the language of the [contract] is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Lynn* at 432, 689 S.E.2d at 205. In determining whether an instrument is ambiguous, "words are to be given their usual and ordinary meaning and all the terms of the agreement are to be reconciled if possible." *Id.* Extrinsic evidence may only be considered where terms cannot be construed from the four corners of the contract and the court must not "under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." *Id.*

The Declaration is, concededly, a document whose drafting necessitates close reading and careful consideration, but its purpose and intent is readily discernable from its four corners. See *Archer Daniels Midland Co, supra*, (Contractual provisions requiring "careful reading and cross-referencing" are not, for that reason, ambiguous). There is no ambiguity in the provisions of the Declaration material to this case that would necessitate resort to extrinsic evidence. If any ambiguities did exist, they would be resolvable without resort to extrinsic evidence under the rule that ambiguities in a declaration of condominium are construed against the developer who drafted it. *Harbour Pointe, LLC v. Harbour Landing Condo. Ass'n, Inc.*, 300 Conn. 254, 260, 14 A.3d 284, 288 (2011); *Walker v. 90 Fairlie Condo. Ass'n*, 290 Ga.App. 171, 176, 659 S.E.2d 412, 416 (2008); *Alternative Dev., Inc. v. St. Lucie Club & Apartment Homes Condo. Ass'n, Inc.,* 608 So.2d 822, 825 (Fla. 4th DCA 1992). Accordingly, Defendants' duties to Plaintiffs and the Condominium are subject to interpretation as a matter of law.

Defendants' duties to Plaintiffs with regard to the roof of Albert Hall are governed by Section 14.9 of the Declaration.

Subsection 14.9(b) provides, in relevant part as follows:

(b) <u>Maintenance</u>.  **Declarant further warrants and represents** that it will cause to be maintained in a clean and sightly condition all parking areas and common areas within the entrance levels of the Condominium and appurtenant easements, and **that it will cause the** stairwells required by applicable building and fire codes, **the structural components of the building and the roof of the building to be serviced and maintained in a good and operable condition at all times.**  Any cost of maintenance of such stairwells, common areas within the entry level, structural components of the building and the roof of the building may be charged to the Association in a percentage equal to the following fraction: (total gross square feet within the Condominium divided by total gross square feet within the building as a whole). . . .  All such charges assessed against the Association may be charged as a Common Expense by the Association. . . .

[Emphasis added].  Subsection 14.9(c) provides:

(c)  <u>Support</u>.  Declarant represents and warrants that it will cause to be maintained, at its own expense and without expense to the Association, all structural components of the building . . . on levels other than those submitted to the Act necessary to maintain in safe condition the Condominium, and further agrees to maintain at its own expense any . . . portions of the building . . . or improvements located therein, which are reasonably necessary in order for the Condominium to be maintained in a good and safe condition[.]

Finally, Subsection 14.9(h) provides:

(h)  <u>Upkeep</u>.  **For the benefit of maintaining the value of the Condominium, Declarant shall, at its sole cost and expense keep all portions of the property described in Exhibit A attached hereto, including all portions of the building** or buildings within which the Condominium is located, with the exception of the Property **in good order and safe condition, and make all repairs therein and thereon, interior and exterior, structural and nonstructural, ordinary and extraordinary, necessary to keep same in good order and safe condition, howsoever a necessity or desirability thereof may occur, and whether or not necessitated by wear, tear, obsolescence or defects, blatant or otherwise; and Declarant further agrees that it shall not suffer or commit, and shall use all reasonable caution to prevent, waste to the same**.  The Association shall, at its sole cost and expense (subject to any conflicting provision of this declaration), keep its Common Elements in good order and safe condition, and shall make or cause to be made all repairs therein and thereon, interior and exterior, structural and nonstructural, ordinary and extraordinary, necessary to keep same in good

11

> order and safe condition, howsoever a necessity or desirability thereof may occur, and whether or not necessitated by wear, tear, obsolescence or defects, blatant or otherwise; and the Association shall further be required not to suffer or commit, and shall use all reasonable caution to prevent, waste to such Common Elements.

[Emphasis added].

These subsections contain terms that are defined or clarified by other sections of the Declaration. The defined term "the Property" is discussed above. "Common Elements" is defined by Section 1.6 as "[a]ll portions of the Condominium except the Units." Section 14.9, indicates through use that the terms "common element" and "common area" are used interchangeably in the Declaration. Exhibit A to the Declaration, referenced in subsection 14.9(h) contains the property description set out in Defendants' Deeds.

In interpreting subsections 14.9(b), (c) and (h), the Court must construe the Declaration "in a manner that gives effect to all of its provisions, if the court is reasonably able to do so." *Premier, Inc. v. Peterson*, __ N.C.App.__, 755 S.E.2d 56, 59 (2014). In so doing,

> "it is proper to seek for a rational purpose in the language and provisions . . . and to construe it consistently with reason and common sense. If there is any doubt entertained as to the real intention, [the Court] should reject that interpretation which plainly leads to injustice, and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results.

*Lisk*, at 293, 82 S.E.2d 99, 101-02.

Read in light of these principles, subsection 14.9(c) forecloses any argument that Defendants' obligations with regard to the roof are governed solely by subsection 14.9(b). By Subsection 14.9(c), Declarant, on behalf of itself, its successor and its assigns explicitly warranted that it would maintain the "all structural components of the building other than those submitted to the Act" in "good and safe condition." Significantly, the term "structural components" has an understood meaning under the

12

Uniform Condominium Act as enacted by North Carolina. Under N.C. Gen. Stat. § 47C-2-101, neither a declaration of condominium or nor a declaration amendment adding units to an existing condominium may be recorded "unless all structural components and mechanical systems of all buildings containing or comprising any units thereby created are substantially completed[.]" Uniform Law Comment 6 to this statute explains that,

> The concept of "structural components and mechanical systems" is one commonly understood in the construction field and this comment is not intended as a comprehensive list of those components. For example, however, the term "structural components" is generally understood to include those portions of a building necessary to keep any part of the building from collapsing, and to maintain the building in a weathertight condition. This would include the foundations, bearing walls and columns, exterior walls, **roof**, floors and similar components.

[Emphasis added].

The distinction between Defendants' "maintenance" duties under subsection 14.9(b), their "support" duties under 14.9(c), and their "upkeep" duties under 14.9(h) is made clear by giving the text within each section a common sense reading that gives full effect to both subsections.

"Maintenance" applies only to specific areas and specified tasks; it means a) keeping the parking areas and 'common areas *within* the entrance levels of the Condominium and appurtenant easements" in a "clean and sightly condition" and b) keeping i) the fire escape stairwells, ii) the structural components of the building, and iii) the roof of the building "serviced and maintained in a good and operable condition." Thus, under the rule of common sense interpretation, taken as a whole, "maintenance" embraces routine, recurring service tasks and routine repairs necessary to keep the specified areas and features sightly and/or functioning properly during their normal lives.

"Upkeep," by contrast, embraces the kind of work necessary to keep the entire building "in good order and safe condition," even when regular maintenance and service has been performed, i.e. repairs "interior and exterior, structural and nonstructural,

13

ordinary and extraordinary necessary to keep" the building "in good order and safe condition" regardless of whether "necessitated by wear, tear, obsolescence or defects[.]" The key words for delineating the intent, purpose and scope of subsection 14.9(h) are at its beginning: the undertakings of subsection 14.9(h) are explicitly accepted by PIRT, on behalf of itself, its heirs and assigns "[f]or the benefit of maintaining the value of the Condominium[.]" Defendants are required to keep Albert Hall "in good order and safe condition" and to be proactive to prevent waste. They are required to make *all* repairs to Albert Hall necessary to keep the building in "good order and safe condition" such that the value of the Condominium is maintained.

Contrary to the allegations of Defendants' Second Defense, the duties imposed upon Defendants by subsections 14.9(h) to accomplish this purpose are expansive, but they are neither vague nor ambiguous. On the contrary, they are not vague or ambiguous precisely because they are, and are intended to be, expansive. The lack of a specific enumeration of duties discloses an intent to forestall the possibility of unintentional gaps or omissions that could be exploited by the building's owners and ensure that any doubts as to whether a duty exist are resolved in favor of the Association and its members.

Similarly, the covenant of "support" of 14.9(c) overlaps, but is not coextensive with, the coverage of subsection 14.9(h) so as to ensure that the building's owners could not thereafter allege the existence of an exploitable gap in the otherwise comprehensive coverage of subsection 14.9(h). While limited specifically to the building within which the Condominium is located, as distinguished from the entire property described in Exhibit A, it specifies that both the structural components of the building and the building's internal utility infrastructure are to be maintained by Defendants at Defendants expense.

The scope of Defendants' duties under section 14.9(c) and (h) to maintain support, prevent waste and maintain the building in good order and safe condition and for the benefit of maintaining the value of the Condominium is not unlimited. Defendants' need

14

not undertake improvements or expansions to increase the value of the Condominium. Defendants could not be required to add a water feature or install stained glass windows or otherwise dress up the building to maintain the value of the Condominium by compensating for declines in value attributable to general market swings or the condition of neighboring property. Subsections 14.9(c) and (h) do, however, by their own terms, indicate the drafter's intent that Albert Hall's owners must do whatever is necessary to keep the condition of the building, it's structural components and the underlying realty from reducing the value of the Condominium. Necessarily, this includes replacing the building's roofing system when it has outlived its useful life.

## CONCLUSION

On the basis of the arguments and authorities cited herein, Plaintiffs respectfully request partial judgment on the pleadings on their fifth claim for relief and entry of a declaratory judgment interpreting the duties of Defendants' under the Declaration with regard to the roof of Albert Hall and the matters otherwise raised by the Complaint.

This the 1st day of May, 2014.

/s/ Michael L. Robinson
Michael L. Robinson, N.C. Bar No. 9438

/s/ H. Stephen Robinson
Stephen Robinson, N.C. Bar No. 18401
Counsel for Plaintiffs

OF COUNSEL:

ROBINSON & LAWING, L.L.P.
101 North Cherry Street, Suite 720
Winston-Salem, North Carolina 27101-4035
Telephone: (336) 631-8500
Facsimile: (336) 631-6999

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:12-CV-906

| | |
|---|---|
| **THE LOFTS AT ALBERT HALL CONDOMINIUM ASSOCIATION, INC AND JEFFREY L. SMITH,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**VINTAGE OAKS II, A CALIFORNIA LIMITED PARTNERSHIP, BARTON/BOESPFLUG II, A CALIFORNIA LIMITED PARTNERSHIP, AND BULKLEY INVESTORS,**<br><br>**Defendants.** | |

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Gary Sue
    Burton Sue & Anderson, LLP
    Gary.Sue@burtonandsue.com

        Respectfully submitted,

        /s/[Stephen Robinson]
        Stephen Robinson
        Robinson & Lawing, L.L.P.
        101 North Cherry Street, Suite 720
        Winston-Salem, North Carolina 27101-4035
        Phone: (336) 631-8500
        E-mail: srobinson@robinsonlawing.com