UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:12-CV-906

| | |
|---|---|
| **THE LOFTS AT ALBERT HALL CONDOMINIUM ASSOCIATION, INC AND JEFFREY L. SMITH.** <br><br> **Plaintiffs,** <br><br> vs. <br><br> **VINTAGE OAKS II, A CALIFORNIA LIMITED PARTNERSHIP, BARTON/BOESPFLUG II, A CALIFORNIA LIMITED PARTNERSHIP, AND BULKLEY INVESTORS** <br><br> **Defendants.** | |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**MATTER BEFORE THE COURT**

Before the Court is Plaintiffs' motion for partial summary judgment on Plaintiffs' First, Second, Third and Fourth Claims for Relief (ECF No. 81).

**PROCEDURAL HISTORY**

Plaintiffs filed this action on June 28, 2012 in Forsyth County Superior Court and it was removed to this Court by Defendants on diversity grounds on August 20, 2012 (ECF No. 1, 4, 10). Defendants then moved to dismiss the Complaint for failure to state a claim on September 10, 2012 (ECF No. 11). Plaintiffs' amended their complaint as of right on September 26, 2012 (ECF No. 13) and Defendants again moved to dismiss for failure to state a claim on October 24, 2012 (ECF No. 15), which motion was denied on

February 21, 2013. (ECF No. 27). Defendants then filed an answer and what purported to be a third party complaint against Piedmont Institute for Research and Technology, LLC ("PIRT"), the original developer of the building and David Shannon, who was allege to own PIRT. (ECF No. 29). PIRT and Shannon's motion to dismiss the Third Party Complaint (ECF No. 37, filed May 13, 2013) for failure to state a claim was granted by an order and opinion of this Court entered July 15, 2013. (ECF No. 48).

Still pending are Defendants' eleventh-hour motion (ECF No. 67) to amend to add a counterclaim against the Association for expenses they claim they are owed under the Declaration, Plaintiffs' motion to strike Defendants' Reply (ECF No. 71) in support of Defendants' motion to amend, filed April 22, 2014, and Plaintiffs' Rule 12(c) Motion for Partial Judgment on the Pleadings on their Fifth Claim for Relief filed May 1, 2014 (ECF No. 73). Plaintiffs' timely gave notice of intent to file a dispositive motion (ECF No. 78) on May 27, 2014 and now move the Court for partial summary judgment.

## STATEMENT OF THE FACTS

Albert Hall is a six story building located at 101 N. Chestnut Street in Winston Salem, North Carolina. (ECF No. 12-2, § 1.16; Affidavit of Angie Mauldin, ¶ 2). The interior of the top floor of Albert Hall is occupied by the Lofts at Albert Hall Condominium ("the Condominium"). Plaintiffs are the condominium association for the Condominium ("the Association") and Jeffrey L. Smith, one of the condominium unit owners. (ECF No. 13 ¶ 1-2; ECF No. 29 ¶ 1-2). The Defendants are the owners of the remainder of Albert Hall, the land upon which it is located and all easements and rights of record appurtenant thereto. (ECF No. 12-1; 12-2; 12-3; Defendants' Amended Responses to Plaintiffs' Requests for Admission, Req. 2).

The Condominium was created by PIRT by a declaration of condominium ("the Declaration") dated December 18, 1997 and filed with the Forsyth County Register of Deeds at Book 1980, Page 1984 on January 1, 1999. (ECF No. 12-1). However, shortly before the condominium units were ready for occupancy, there was a fire in a nearby

2

building that caused extensive damage to the northern portion of Albert Hall's roof. (ECF No. 82, Affidavit of Jeffrey L. Smith, ¶ 2.) To repair the damage, PIRT had a new roofing system applied atop the old roof. (ECF No. 82, Smith Aff. ¶ 2; ECF No. 84, Affidavit of Posey Stanley, ¶ 6.) As a result, the roof of Albert Hall actually has two separate roofing systems applied, one atop the other, to the structural concrete roof deck. The "top" roof is a sprayed-on polyurethane foam with an acrylic top coating (the "SPF roof"). This SPF roof was applied atop the pre-existing fire-damaged "built up roof" ("BUR") consisting of tar-gravel aggregate applied atop of a layer of insulation. (ECF No. 84, Stanley Aff. ¶ 6; ECF No. 85, Affidavit of Robert Riley, ¶ 3.) All of these layers of roofing material, old and new, are applied to the building's sloped structural concrete deck (See ECF No. 12-2, Exhibit B, p.2).

For several years, the residents of the Condominium have contended with a growing problem with leaks into their units and common areas from the roof. (ECF No. 82, Smith Aff. ¶ 4; ECF No. 83, Affidavit of Angie Mauldin, ¶ 3; See also email correspondence attached as Exhibit A to ECF No. 86, Affidavit of Leigh Green.) As evidenced by the work orders from the records of Team Roofing, Inc.[1] a company retained by Defendants to deal with them, the leaks in Albert Hall's roof were frequent, difficult to find and fix, and costly to repair. (See ECF No. 87, Affidavit of Stephanie Boyd Ex. A; pp. 001-037.) Correspondence between Leigh Green of Team Roofing, Inc. and Cindy Rosasco of Viking Properties, Defendants' property agent, reveal Defendants' growing awareness throughout 2010 and 2011 of a systemic problem that could not be remedied by continuing spot repairs. (ECF No. 86, Green Aff., Ex. A). Eventually, Defendants solicited bids for the replacement of the northern side of Albert Hall's roof.

---

[1] The company in question has had several name changes over the relevant period, including Carolina Roofing, Inc., Team Roofing, Inc. and Teamcraft Roofing, Inc. (Byrd Aff. ¶ 1.)

3

(ECF No. 86, Green Aff, Ex. A; ECF No. 84, Stanley Aff., ¶ 3, 8; ECF No. 85, Riley Aff, ¶ 6; ECF No. 87, Boyd Aff., Ex A, pp. 036-045.)

According to the roofing professionals who prepared the bids Defendants' solicited from their employers, the roof of Albert Hall has outlived its useful life, is beyond repair and must be replaced. (ECF No. 84, Stanley Aff. ¶ 7, 10; ECF No. 85, Riley Aff. ¶ 7-8.) Posey Stanly, an estimator for Triad Roofing Company, Inc. with over thirty years of experience in the roofing industry, opines that continued attempts to repair leaks as they occur will offer only temporary relief because of the poor condition of the roof. For a long term solution, both the sprayed on roofing and built-up tar-aggregate layers must be removed down to the bare structural concrete roofing deck, cracks and penetrations in the roofing deck found and repaired and a new roofing system applied. (ECF No. 84, Stanley Aff. ¶ 10). As Mr. Stanley put it "[i]n my over thirty years of roofing experience, if ever there was a roof that need to be replaced," it is the roof of Albert Hall. (*Id.*, ¶ 7.)

Robert Riley of Baker Roofing, Inc. explains that this is so because when water penetrates through a hole or crack in the outer membrane of the SPF, the underlying section of the sprayed-on foam layer will soak up water like a sponge and become saturated. Unable to evaporate, the water does what water always does: it seeks its own level, trickling down into the underlying built-up roof and migrating until if finds a way down. (ECF No. 85, Riley Aff. ¶ 3-4.) The result is that the place in the ceiling of Albert Hall where water is entering into the Condominium can be quite distant from the damaged section of the roof. (*Id.*, ¶ 5.) Like Mr. Posey, Mr. Riley is of the opinion that unless and until at least the northern side of the roof (as shown on the diagrams and specifications accompanying the estimates attached to their affidavits as exhibits) is replaced, leaks will inevitably recur.

Defendants have been very much aware of this for years. (See, e.g. ECF No. 86, Green Aff, Ex. A, pp. 063-70, 75-78). Nothing, however, has been done. Initially,

4

Defendants' demanded that the Association pay for 36% of the roof replacement cost. (ECF No. 13-2; ECF No., 89, Def's Amended Responses to Plaintiff's Requests for Admission, Req. 5 and 6). The Association denied any such liability under the Declaration but negotiated in good faith and eventually submitted a settlement proposal substantially accepting all of Defendants' demands (*Id*.; ECF No. 82, Smith Aff., Ex I). The Association, however, never received a response, leading to the present action.

## ARGUMENT

**I. STANDARD OF REVIEW**

Summary judgment is appropriate when a party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. Rule 56(a). "A genuine issue of fact exists "when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *F.D.I.C. v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *The News and Observer Publishing Co. v. Raleigh-Durham Airport Authority*, 597 F.3d 570, 576 (4th Cir. 2010). "Once a motion for summary judgment is made and supported, 'the nonmoving party may not rest on the allegations in his or her pleading, but must produce sufficient evidence that demonstrates that a genuine issue exists for trial.'" *Garofolo v. Donald B. Heslep Assocs., Inc.*, 405 F.3d 194, 200 (4th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

**II. AS A MATTER OF LAW, THE ROOF OF ALBERT HALL, ALONG WITH THE REMAINDER OF THE STRUCTURAL ENVELOPE OF THE BUILDING, IS THE SOLE PROPERTY OF DEFENDANTS.**

A common element of all of Plaintiffs' claims for relief is Defendants' ownership of the roof of Albert Hall. Based upon their response to Plaintiffs' motion for partial judgment on the pleadings (ECF No. 79) however, it appears that Defendants, in addition to denying that they are obligated to maintain the roof of a building they own, now also

5

seek to further delay their day of reckoning by attempting to cast a cloud upon their own title. Specifically, Defendants seem to assert that the Declaration is ambiguous on the question of whether the roof of Albert Hall is owned entirely by Defendants or whether some or all of it might not, in fact, be owned by the Association and/or the Unit Owners of the Condominium.

As a threshold matter, Defendants tortured attempt to find ambiguity in the Declaration where none exists is unavailing. Defendants cannot manufacture a triable issue of fact by claiming extrinsic evidence is needed to clear up an "ambiguity" in a document drafted entirely by its predecessor in interest without the input from, or negotiation with, other parties. Rather, in all such cases, ambiguities are construed against the drafter. *Speedway Motorsports International Ltd. v. Bronwen Energy Trading, Ltd.*, 209 N.C.App. 474, 486, 707 S.E.2d 385, 393 (2011). This rule "rests on a public policy theory that the party who chose the word is more likely to have provided more carefully for the protection of his own interests, is more likely to have had reason to know of uncertainties, and may have even left the meaning deliberately obscure." *Joyner v. Adams*, 87 N.C.App. 570, 576-577, 361 S.E.2d 902, 905 (1987).

By definition, a declaration of condominium is unilateral, a document prepared and recorded by a developer before there are any unit owners with whom to bargain and before the condominium association (which the developer will initially control, in any case) exists. Accordingly, ambiguities in a declaration of condominium are construed against the developer who drafted it. *Harbour Pointe, LLC v. Harbour Landing Condo. Ass'n, Inc.*, 300 Conn. 254, 260, 14 A.3d 284, 288 (2011); *Walker v. 90 Fairlie Condo. Ass'n*, 290 Ga.App. 171, 176, 659 S.E.2d 412, 416 (2008); *Alternative Dev., Inc. v. St. Lucie Club & Apartment Homes Condo. Ass'n, Inc.,* 608 So.2d 822, 825 (Fla. 4th DCA 1992).

As it happens however, no such ambiguity exists. The language of Defendants' deed and the clear intent of the Declaration together make clear that, with the exception

6

of the interior space of the Sixth Floor and the ground floor lobby of the Condominium passenger elevator, Defendants own the entirety of Albert Hall, including its structural envelope, its exterior shell, the roof, and everything down from the roof down to the undecorated interior surface of the ceiling of the sixth floor.

Defendants' deed grants them ownership in fee simple of the entire property upon which Albert Hall is sited, subject only to the Declaration and easements of Record. (See ECF No. 89, Plaintiffs' Req. for Adm. Ex. 1) Section 1.16 of the Declaration defines "the Property," as:

> [t]he real estate submitted to the [North Carolina Condominium] Act by this Declaration of Condominium, being all of the sixth level (top floor) of the building known as "Albert Hall" (there being a total of six levels in such building) and an adjoining elevator tower and lobby area (located on land described on attached Exhibit A-2) as more fully described in the Floor Plans and including all easements and appurtenances belonging to or in any way pertaining to said real estate, and further including any real estate submitted to the Act by amendment to this Declaration.

Section 1.12 of the Declaration defines the "Floor Plans" referenced in Section 1.16 are as the plans attached as Exhibit B to the Declaration. Page 1 of Declaration Exhibit B discloses that the Condominium consists of the Units, the Common Areas and Limited Common Areas. Nothing else is shown as being part of the Condominium on the Floor Plans. The elevation notations on The Floor Plans indicate that the upper and lower boundaries of the Condominium are the of the "finished ceiling" and "finished floor," which are further indicated and distinguished from the "structural ceiling" and "structural floor" of the building on p. 2 of Exhibit B.

This is consistent with the definition of Unit Boundaries of section 1.21, which provides that:

> [t]he boundaries of each Unit, both as to vertical and horizontal planes, as shown on the Floor Plans, are the interior undecorated surfaces of the perimeter walls, exterior doors and exterior windows facing the interior of the Unit, the undecorated surfaces of the ceiling facing the interior of the Unit, and the topmost surfaces of the subflooring[.]

7

Section 1.21 makes outside decks that are only accessible from a single unit part of that Unit. In so doing, it carefully notes that the property boundaries of such decks are the undecorated inward face of the ceiling and the top layer of the subfloor and sets the exterior vertical boundary of the deck as an imaginary plane extending from the outer undecorated face of the deck's ceiling to the deck's floor.

Every provision of the Declaration that speaks to boundaries limits the Condominium to interior spaces. Nothing in the Declaration, by contrast, indicates any intention to make any exterior portion of Albert Hall other than the patios part of the Condominium. Rather, the Declaration makes clear the developer's intent that the entire structural envelope and exterior of Albert Hall, along with all of the remaining floors of the building, would belong to it and its successors. Article IX, setting out Declarants' obligation to maintain casualty insurance emphasize this point, repeatedly referring to Declarant's obligation to maintain insurance on the building "*within which*" the Condominium is located. Subsection 14.9(h) does likewise. Perhaps most significantly of all, the Declaration neither creates, reserves or references any rights or easements from the Unit Owners or the Association for the benefit of the developer and its successors to the roof or any portion of the exterior shell of Albert Hall.

### III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FIRST AND SECOND CLAIMS FOR RELIEF

#### A. PLAINTIFFS ARE ENTITLED TO "APPROPRIATE RELIEF" UNDER N.C. GEN. STAT. N.C. GEN. STAT. § 47C-4-117

Plaintiff's First and Second Claims for relief arise under N.C. Gen. Stat. § 47C-4-117. This provision of the North Carolina Condominium Act provides as follows:

> [iIf a declarant or any other person subject to this chapter fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of person adversely affected by that failure has a claim for appropriate relief. The court may award reasonable attorney's fees to the prevailing party.

The North Carolina Condominium Act, as codified at N.C. Gen. Stat. Chap. 47C, is based upon the Uniform Condominium Act (1980). The Uniform Law Comment to this section makes clear that it

> provides a general cause of action or claim for relief for failure to comply with the Act by either a declarant or any other person subject to the Act's provisions. Such persons might include unit owners, persons exercising a declarant's rights of appointment pursuant to Section 3-103(d), or the association itself.

Parsing § 47C-4-117 yields the following the elements: a) the defendant is a declarant or other person subject to the North Carolina Condominium Act; b) the defendant has failed to comply with a provision of the Act, the declaration, or the bylaws of a condominium subject to the Act; and c) the plaintiff has been adversely affected by defendant's failure to comply with the Act or the declaration or bylaws of a condominium subject to the Act. The facts of record establish Plaintiffs' entitlement to appropriate relief under N.C. Gen. Stat. § 47C-4-117.

### 1. *Defendants are Subject to the North Carolina Condominium Act.*

Pursuant to N.C. Gen. Stat. § 47C-1-102, Chapter 47C applies to all condominiums created in North Carolina after October 1, 1986. The Declaration creating the Lofts at Albert Hall Condominium is dated December 18, 1997 and was made a matter of public record on January 6, 1998. (ECF No. 12-2; ECF No. 29, ¶ 8.) Defendants admit that they own Albert Hall (ECF No. 89, Defs' Amended Response to Req. for Adm. 2; ECF No. 29, ¶¶ 6, 23). Under the express terms of their deed from PIRT, Defendants took title to Albert Hall "[s]ubject to the terms and conditions of that Declaration of Condominium of the Lofts at Albert Hall Condominium recorded in Book 1980, Page 1954, Forsyth County Registry, as amended[.] (Defs' Amended Response to Req. for Adm. 1-4.) Defendants admit that they are legally bound by the Declaration. (ECF No. 89, Defs' Amended Response to Req. for Adm. 4; ECF No. 29, ¶ 10.)

It is an elementary principle of property law that grantees take title to land subject to all duly recorded affirmative covenants, easements and encumbrances granted by their predecessors in interest. *A. Perin Development Co., LLC v. Ty-Par Realty, Inc.*, 193 N.C. App. 450, 667 S.E.2d 324 (2008). A covenant that runs with the land is enforceable by the owner of the dominant estate against the owner of the servient estate regardless of whether the owners of either estate were original covenanting parties or successors in interests. *Terres Bend Homeowners Ass'n v. Overcash*, 185 N.C.App. 45, 50, 647 S.E.2d 465, 469 (2007). By the express terms of the Declaration, the covenants PIRT, the developer of Albert Hall, granted to the Association and the Unit Owners and Occupants, are covenants running with the land binding on PIRT's successors in interest.

> Under section 4.5 of the Declaration,
>
> All easements and rights described in this declaration are appurtenant easements running with the land or real estate, and except as otherwise expressed herein shall be perpetually in full force and effect, and shall inure to the benefit of and be binding upon Declarant, the Association, Unit Owners, Occupants, Security Holders and any other person having any interest in the Condominium or any part thereof and their respective heirs, successor [sic] and assigns.

Likewise, pursuant to section 5.8 of the Declaration,

> Declarant and each Unit Owner and Occupant shall be subject to all restrictions, conditions and covenants of this Declaration, and all such restrictions, conditions and covenants shall be deemed to be covenants running with the land or real estate, and shall bind every person having any interest in the Property, and shall inure to the benefit of every Unit Owner and their respective heirs, successors and assigns.

Defendants are thus "subject to" Chapter 47C for purposes of N.C. Gen. Stat. § 47C‑4‑117 because they owe continuing duties to Plaintiffs and to the Unit Owners of the Condominium under the express terms of the Declaration that are enforceable upon Defendants as the successors in interest to PIRT. N.C. Gen. Stat. § 47C‑1‑108 (principles of law and equity supplement provisions of North Carolina Condominium Act).

## 2. Defendants Have Failed to Comply with Provisions of a Declaration Subject to N.C. Gen. Stat. Chap. 47C.

The Declaration is subject to North Carolina Condominium Act because it was executed and recorded after October 1, 1986. N.C. Gen. Stat. § 47C-1-102. As a matter of law, Defendants have failed to comply with their duties under section 14.9 of the Declaration. Subsection 14.9(c) provides, in relevant part, as follows:

> (c) <u>Support</u>. Declarant represents and warrants that it will cause to be maintained, at its own expense and without expense to the Association, all structural components of the building . . . on levels other than those submitted to the Act necessary to maintain in safe condition the Condominium, **and further agrees to maintain at its own expense any . . . portions of the building . . . or improvements located therein, which are reasonably necessary in order for the Condominium to be maintained in a good and safe condition**[.]

Subsection 14.9(h) provides, in relevant part:

> (h) <u>Upkeep</u>. **For the benefit of maintaining the value of the Condominium, Declarant shall, at its sole cost and expense keep all portions of the property described in Exhibit A attached hereto, including all portions of the building** or buildings **within which** the Condominium is located, with the exception of the Property **in good order and safe condition, and make all repairs therein and thereon, interior and exterior, structural and nonstructural, ordinary and extraordinary, necessary to keep same in good order and safe condition, howsoever a necessity or desirability thereof may occur, and whether or not necessitated by wear, tear, obsolescence or defects, blatant or otherwise; and Declarant further agrees that it shall not suffer or commit, and shall use all reasonable caution to prevent, waste to the same**.

[Emphasis added.]

By their own terms, subsections 14.9(c) and (h) disclose the drafter's intent that Albert Hall's owner would do that which is necessary to keep the condition of the building, it's structural components and the underlying realty in good condition to prevent waste, danger to inhabitants of the Condominium or reduction in its value. The

11

evidence of record would support a jury finding that Defendants have violated these provisions.

The affidavits of Jeffrey Smith (ECF No. 82, ¶¶ 4-12, 14, 17, Exhibits A-E) and Angie Mauldin (ECF No. 83, ¶¶ 3, 6), the Team Roofing documents authenticated by the Affidavits of Leigh Green and Stephanie Boyd, and Defendants' own admissions (ECF No. 89, Defendants' Amended Resp. to Plaintiff Reqs. For Adm. 7-8; ECF No. 29, Answer ¶ 12, Third Party Claim ¶18) establish that the roof of Albert Hall leaks when it rains. The Smith and Mauldin affidavits further establish that the spot repairs referenced in the Team Roofing documents sometimes provide temporary relief from the leaks (EFF No. 82, Smith Aff. ¶ 5-10; ECF No. 83, Mauldin Aff. ¶ 5), and thereby establish that the water leaking into the Condominium is coming through the roof and not from some other source such as hidden pipes.

The affidavit of Jeffrey L. Smith further establishes that the damage from the leaks and resulting damage have adversely affected the value of his property, have made him embarrassed to entertain guests and have created safety problems in the Condominium. Mr. Smith's testimony establishes that these problems are an ongoing source of annoyance, worry and anxiety, all of which has interfered with and impaired his quiet enjoyment of his property. (ECF No. 82, ¶ 15-18). *See Long v. City of Charlotte,* 306 N.C. 187, 204, 293 S.E.2d 101, 112 (1982) (evidence concerning plaintiffs' stress, anxiety, fear, annoyance, loss of sleep, and denial of quiet use, possession and enjoyment of property admissible to prove diminution in fair market value of property). Mr. Smith further testifies that the water intrusion has caused ceiling tiles to become saturated and fall and that the wall damaged by water intrusion requires toxic mold remediation. Ms. Mauldin, a licensed realtor, notes that any unit owner who attempted to sell a unit would be required to disclose the problems with the roof or ceiling to prospective buyers under N.C. Gen. Stat. § 47E-4.

The affidavits of Posey Stanley (ECF No. 84) and Robert Riley (ECF No. 85) establish that the roof is not, in their opinion in good condition, that the leaks are due to the degraded condition of the roof, that spot repairs cannot fix the problem because the roof is worn out and in need of replacement, and that the leaks will recur unless and until at the northern half of the roof is replaced. This evidence is buttressed by the video record of Plaintiffs' Rule 34 inspection of premises on March 14, 2014 (ECF No. 90, Affidavit of Greg Einstein, Exhibit A) and photographs taken by counsel for Plaintiffs at that time (ECF No. 88, Affidavit of H. Stephen Robinson, Exhibit A). In light of both the testimony of Mssrs. Posey and Riley and the actual experience of Plaintiffs that repairs are no longer effective to put the roof into a good, safe and operable condition, the foregoing would support a jury finding that to comply with its duties subsections 14.9(c) and (h) of the Declaration, Defendants must replace at least the northern portion of the roof of Albert Hall.

  *c)* *Plaintiffs Have Been Adversely Affected by Defendant's Failure to Comply with the Declaration*.

The adverse effects of Defendants' failure to comply with subsections 14.9(c) and (h) of the Declaration upon Mr. Smith are set out in his affidavit at ECF No. 82, ¶¶ 6, 8-11, and 14-19, and further documented by the photographs attached thereto as Exhibits A-F. His property has been damaged, his peace of mind has been disturbed, his quiet enjoyment of his property has been disrupted. Under N.C. Gen. Stat. § 47C-3-102(4) and (6), the Association is empowered to instituted, defend and maintain actions on matters affecting the Condominium generally. The adverse effects of Defendants' failure to comply with the Declaration on the Condominium's common areas, and to the Condominium generally are set out at ¶¶ 4, 12, 14 and 17 of Mr. Smith's affidavit (ECF No. 82) and ¶¶ 3, 6, and 7 of Ms. Mauldin's Affidavit (ECF No. 83).

**B. PLAINTIFFS ARE ENTITLED TO BOTH INJUNCTIVE RELIEF AND DAMAGES UNDER THEIR CLAIM FOR APPROPRIATE RELIEF**

As noted in by the Uniform Law Comment to N.C. Gen. Stat. § 47C-4-117,

13

>[a]claim for appropriate relief might include damages, injunctive relief, specific performance, rescission or reconveyance if appropriate under the law of the state, or any other remedy normally available under state law. . . . This section specifically permits punitive damages to be awarded in the case of willful failure to comply with the Act and also permits attorney's fees to be awarded in the discretion of the court to any party that prevails in an action.

In diversity cases, motions for *preliminary* injunctions are decided under federal standards, because their purpose is merely to preserve the status quo pending a trial on the merits. However, under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), state law governs the entry of final injunctions. *Capital Tool and Mfg. Co., Inc. v. Maschinenfabrik Herkules,* 837 F.2d 171, 172 (4th Cir. 1988); *see also Noell Crane Systems GmbH v. Noell Crane and Service, Inc,* 677 F.Supp.2d 852, 877 n. 33 (E.D.Va. 2009).

A mandatory injunction is "affirmative in nature and requires positive action involving a change of existing conditions—the doing or undoing of an act." *Roberts v. Madison County Realtors Ass'n*, Inc., 344 N.C. 394, 400, 474 S.E.2d 783, 787 (1996). Under North Carolina law, a mandatory injunction is the proper remedy to enforce the provisions of a condominium declaration. *Wrightsville Winds Townhouses Homeowners' Ass'n v. Miller*, 100 N.C.App. 531, 536, 397 S.E.2d 345, 347 (1990), *disc. rev. denied*, 328 N.C. 275, 400 S.E.2d 463 (1991). *See also Buie v. High Point Associates Ltd. Partnership*, 119 N.C.App. 155, 160, 458 S.E.2d 212, 216, *disc. rev. denied* 41 N.C. 419, 461 S.E.2d 755 (1995) (mandatory injunction is proper remedy to enforce restrictive covenant unless injury is so slight as to be *de minimis* and cannot be avoided on theory that loss will be disproportionate to good accomplished); *Schwartz v. Banbury Woods Homeowners Ass'n, Inc*., 196 N.C.App. 584, 596, 675 S.E.2d 382, 390- 91 (2009), *disc. rev. denied* 363 N.C. 856, 694 S.E.2d 391 (2010). However, whether such an injunction should be granted is within the sound discretion of the trial court. *Roberts* at 403, 474 S.E.2d at 789.

Plaintiffs have suffered damage that can and should be remedied by a monetary award, but monetary damages can only remedy past damage, they cannot stop the roof from leaking. Rather, the evidence before the Court establishes that only a mandatory injunction compelling Defendants to have the northern portion of the roof of Albert Hall replaced by a roofing contractor acceptable to the Association performing the work pursuant to a proposal approved by the Association will afford Plaintiffs the benefit of the covenants of the Declaration.

## IV. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR THIRD CLAIM FOR RELIEF

Plaintiff's second claim for relief is for abatement of a private nuisance. "The ownership or rightful possession of land necessarily involves the right not only to the unimpaired condition of the property itself, but also to some reasonable comfort and convenience in its occupation." *Kaplan v. Prolife Action League of Greensboro*, 111 N.C.App. 1, 21, 431 S.E.2d 828, 838 (1993). Under North Carolina law, "a nuisance is the improper use of one's own property in a way which injures the land or other right of one's neighbor." *Rudd v. Electrolux Corp.*, 982 F. Supp. 355, 368 (M.D.N.C. 1997).

"In order to establish a claim for nuisance, a plaintiff must show the existence of a substantial and unreasonable interference with the use and enjoyment of its property." *The Shadow Group, LLC v. Heather Hills Home Owner's Association*, 156 N.C. App. 197, 200, 579 S.E.2d 285, 287 (2003). A "substantial interference" exists where the plaintiff suffers substantial annoyance, some material physical discomfort or injury to its property." *Id.* An interference is "unreasonable" where "it would not be reasonable to permit the defendant to cause such an amount of harm intentionally without compensating for it." *Whiteside Estates, Inc., v. Highlands*, *Cove, L.L.C.*, 146 N.C.App. 449, 456, 553 S.E.2d 431, 437 (2001), *disc. rev. denied* 356 N.C. 315, 571 S.E.2d 220 (2002).

> Private nuisances are either nuisances *per se* or nuisances *per accidens*[.] A nuisance *per se* or at law is an act, occupation, or structure which is a

15

nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances *per accidens* or in fact are those which become nuisances by reason of their location, or by reason of the manner in which they are constructed, maintained, or operated. A person who intentionally creates or maintains a private nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised by him to avoid such injury.

*Elliott v. Muehlbach*, 173 N.C. App. 709, 711-712, 620 S.E.2d 266, 269 (2005) [Internal citations and quotation marks omitted].

> Analytically, a cause of action for unreasonable interference with the flow of surface water causing substantial damage is a private nuisance action, with liability arising where the conduct of the landowner making the alterations in the flow of surface water is either (1) intentional and unreasonable or (2) negligent, reckless or in the course of an abnormally dangerous activity.

*Pendergrast v. Aiken*, 293 N.C. 201, 216-17, 236 S.E.2d 787, 796-97 (1977).

> Most nuisances of this kind are intentional, usually in the sense that the defendant has created or continued the condition causing the nuisance with full knowledge that the harm to the plaintiff's interests is substantially certain to follow. Other nuisances may arise from negligence as, for example, where the defendant negligently permits otherwise adequate culverts replacing natural drainways to become obstructed.

*Id. at* 217, 236 S.E.2d at 797 [citations to authority and quotation marks omitted].

The evidence noted in the preceding sections establishes that Defendants' own the roof of Albert Hall and that, as the result of the manner in which they have maintained it, water has infiltrating into the Condominium and, more specifically, into the Unit owned by Mr. Smith. That evidence further establishes that as a result of the water leaking into his property from Defendants' property, Mr. Smith has suffered substantial annoyance, worry, harassment and disturbance as a result of the ongoing leakage and injury to his personal and real property. That evidence is sufficient to support a jury finding that it would be unreasonable to permit the defendant to cause such an amount of harm intentionally without compensating for it. It is, in fact, difficult to imagine how a jury viewing the damage to Mr. Smith's abode could reasonably conclude otherwise.

16

## V. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FOURTH CLAIM FOR RELIEF.

Plaintiffs' Fourth Claim for Relief alleges trespass to land. "[T]o establish a trespass to real property, a plaintiff must show: (1) his possession of the property at the time the trespass was committed; (2) an unauthorized entry by the defendant; and (3) resulting damage to the plaintiff." *The Shadow Group, LLC* at 201, 579 S.E.2d at 287. Plaintiffs' Fourth Claim for Relief alleges each of these elements and facts sufficient to establish the plausibility of that claim.

Actions that cause water to flow onto the property of another can constitute trespass. *Shadow Group, LLC, supra. See also Chaffin v. Fries Mfg. & Power Co*, 135 N.C. 95, 47 S.E. 226 (1904)*;* (ponding cause by dam is trespass); *Roberts v. Baldwin*, 151 N.C. 407, 66 S.E. 346 (1909) (each time rainwater flowed from ditch constructed on neighbor's land constituted separate act of trespass); *Duval v. Atlantic Coast Line R. Co*., 161 N.C. 448, 77 S.E. 311 (1913) (damage caused by diversion of water onto the land of another is renewing, rather than continuing, trespass); *Forest City Cotton Co. v. Mills*, 218 N.C. 294, 10 S.E.2d 806 (1940).

Mr. Smith is the owner and occupant of realty. (ECF No. 82, ¶ 2.) His property is being invaded by water flowing from property owned by Defendants. Defendants have been made aware of that and are aware of it and are aware that the intrusions are unauthorized and unacceptable. All of the elements of trespass are thus met. The case at bar is perfectly analogous to a classic case of trespass by ponding. A dam and a roof have this in common: both are manmade structures whose purpose is to divert the normal flow of water. Where water diverted by a dam flows onto the property of another and causes damage, the owner of the structure is liable for trespass regardless of whether the intrusion was due to a defect in the dam or whether the dam is operating as intended. Similarly, Defendants are liable to Plaintiffs for trespass because water is flowing onto the property of Plaintiffs because of the condition of Defendants' roof and in violation of Defendants' duties to Plaintiffs as owners of a servient tenement.

## CONCLUSION

On the basis of the arguments and authorities set forth herein, Defendants respectfully pray the court for an order granting their motion for summary judgment and the relief requested therein.

This the 11th day of June, 2014.

/s/ Michael L. Robinson
Michael L. Robinson, N.C. Bar No. 9438
mrobinson@robinsonlawing.com

/s/ Kurt A. Seeber
Kurt A. Seeber, N.C. Bar No. 20110
kseeber@robinsonlawing.com

/s/ H. Stephen Robinson
Stephen Robinson, N.C. Bar No. 18401
Counsel for Plaintiffs
srobinson@robinsonlawing.com

OF COUNSEL:

ROBINSON & LAWING, L.L.P.
101 North Cherry Street, Suite 720
Winston-Salem, North Carolina 27101-4035
Telephone: (336) 631-8500
Facsimile: (336) 631-6999

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
# Civil Action No.: 1:12-CV-906

| | |
|---|---|
| **THE LOFTS AT ALBERT HALL CONDOMINIUM ASSOCIATION, INC AND JEFFREY L. SMITH,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**VINTAGE OAKS II, A CALIFORNIA LIMITED PARTNERSHIP, BARTON/BOESPFLUG II, A CALIFORNIA LIMITED PARTNERSHIP, AND BULKLEY INVESTORS,**<br><br>**Defendants.** | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Gary Sue
>Burton Sue & Anderson, LLP
>Gary.Sue@burtonandsue.com

>Respectfully submitted,

>/s/[Stephen Robinson]
>Stephen Robinson
>Robinson & Lawing, L.L.P.
>101 North Cherry Street, Suite 720
>Winston-Salem, North Carolina 27101-4035
>Phone: (336) 631-8500
>E-mail: srobinson@robinsonlawing.com