IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| The Lofts at Albert Hall Condominium Association, Inc. and Jeffrey L. Smith,<br><br>    Plaintiffs,<br><br>  vs.<br><br>Vintage Oaks II, a California Limited Partnership; Barton/ Boespflug II, a California Limited Partnership; and Bulkley Investors,<br><br>    Defendants. | Civil Action No. 1:12-CV-906<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**COME NOW** the Defendants, Vintage Oaks II, Barton/ Boespflug II and Bulkley Investors (collectively, the "**Defendants**"), by and through counsel, and respond to the Plaintiffs' Motion for Partial Summary Judgment as follows:

**FACTS**

The property which is the subject of this action, "Albert Hall," is a six story building located at 101 N. Chestnut Street in Winston-Salem, Forsyth County, North Carolina. (R. 12-2). The top floor of Albert Hall is comprised of condominium units. (R. 13). Plaintiffs to this action are the Condominium Association, as well as one individual condominium unit owner. (R. 13). Defendants are the owners of the remainder of Albert Hall, subject to the Declaration of Condominium of the Lofts at Albert

Hall Condominium and the Amendments and Exhibits thereto. (R. 29; **Ex. 1**).

By way of this Court's Order, discovery in the above-captioned matter closed on **May 12, 2014**. (R. 66). Plaintiffs filed their Notice of Intent to File Dispositive Motions on **May 27, 2014**, after the deadline to do so had passed. (R. 78, MDLR 56.1(a)).

Preliminarily, Defendants have submitted a multitude of Affidavits to this Court for consideration along with the present Motion. While the Affidavits contain an abundance of hearsay and other inadmissible and, frankly, irrelevant "evidence," each of the Affidavits were submitted for the purpose of proving a singular fact: that the **northern half** of the roof of Albert Hall needs to be replaced. Defendants do not dispute that the northern half of the roof needs to be replaced. For this reason, Defendants respectfully submit to this Court that the Affidavits submitted by Plaintiffs are superfluous. The central issue for this Court's consideration, with respect to the present Motion, is whether Defendants are responsible for replacement of the **northern half** of the roof of Albert Hall.

Also currently pending before this Court are Plaintiffs' Motion for Partial Judgment on the Pleadings, and Defendants'

Motion to Amend their Answer to assert a counterclaim against the Association for expenses owed under the Declaration. (R. 67).

**ARGUMENT**

**I. Standard of Review**

It is well-established that a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted only if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir.1996).

Nevertheless, the burden is on the moving party to establish the absence of genuine issues of material fact and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 323; Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir.1991).

In the present case, Plaintiffs state "[a] common element of all of Plaintiffs' claims for relief is Defendants' ownership of the roof of Albert Hall."  Plaintiffs go on to admit, however, that "Defendants' deed grants them ownership in fee simple of the entire property upon which Albert Hall is sited, **subject** only **to the Declaration** and easements of record." (R. 91, Pl. Brief P. 7).  Therefore, in order for this Court to grant summary judgment to Plaintiffs, Plaintiffs admit this Court must determine, as a matter of law, the Defendants own the roof, and that Defendants, pursuant to the Declaration, thereby have an obligation to replace the roof.  Defendants respectfully submit to this Court that Plaintiffs cannot make such a showing, and that this "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial[,]" and that, therefore, Plaintiffs' Motion for Partial Summary Judgment should be denied.

## II. The Plaintiffs' motion should not be reached for failure to comply with the Local Rules.

N.C.M.D. Local Rule LR 56.1 states, in relevant part:

(a) Notice of Dispositive Motion.  Any party who
intends to file a motion for summary judgment, or any
other dispositive motion, must file and serve notice of
intention to file a dispositive motion within 14 days
following the close of the discovery period.
...

> (g) Failure to Timely File Dispositive Motions. A dispositive motion which is not noticed and filed within the prescribed time will not be reached by the Court prior to trial unless the Court determines that its consideration will not cause delay to the proceedings.

It is undisputed that discovery in the above-captioned matter closed on **May 12, 2014**. (R. 66). Plaintiffs filed their Notice of Intent to File Dispositive Motions on **May 27, 2014**. Defendants respectfully move that this Court should not reach the present Motion due to Plaintiffs' failure to comply with Local Rule 56.1.

## II. Plaintiffs cannot show this Court that the roof Albert Hall, along with the remainder of the structural envelope of the building, is "the sole propriety of Defendants."

In Lynn v. Lynn, 202 N.C. App. 423, 431, 689 S.E.2d 198, 205 (2010), a case cited by the Plaintiffs in support of their pending Motion for Partial Judgment on the Pleadings, the Court, with respect to a court's role in reviewing a contract, stated:

> 'It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument.' Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 693-94, 51 S.E.2d 191, 199 (1949). 'When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court ... and the court cannot look beyond the terms of the contract to determine the intentions of the parties.' Piedmont Bank & Trust Co. v. Stevenson, 79 N.C. App. 236, 240, 339 S.E.2d 49, 52, aff'd per curiam, 317 N.C. 330, 344 S.E.2d 788 (1986). However, '[e]xtrinsic evidence may

- 5 -

Case 1:12-cv-00906-CCE-JLW   Document 94   Filed 07/09/14   Page 5 of 19

> be consulted when the plain language of the contract is
> ambiguous.' <u>Brown v. Ginn</u>, 181 N.C. App. 563, 567, 640
> S.E.2d 787, 790 (2007) (citations omitted). ... The
> court must not, however, 'under the guise of construing
> an ambiguous term, rewrite the contract or impose
> liabilities on the parties not bargained for and found
> therein.' <u>Woods v. Nationwide Mut. Ins. Co.</u>, 295 N.C.
> 500, 506, 246 S.E.2d 773, 777 (1978).

<u>Id</u>. Preliminarily, Plaintiffs argue that Defendants are required to replace the roof of Albert Hall because the "floor plans" attached to the Declaration set the "boundaries" of the condominium property submitted to the Declaration, and "Defendants own the entirety of Albert Hall, including it structural envelope, its exterior shell, the roof, and everything down from the roof down to the undecorated interior surface of the ceiling of the sixth floor." (R. 91, Pl. Brief P. 7). **"The Property"** submitted to the Declaration, however, is set forth in the Declaration, Section 1.16:

> The real estate submitted to the Act by this
> Declaration of Condominium, being all of the sixth
> level (top floor) of th building known as "Albert Hall"
> (there are a total of six levels in such building) and
> an adjoining elevator tower and lobby area (located on
> land described on attached exhibit A-2) as more fully
> described in the Floor Plans and including all rights,
> privileges, easements and appurtenances belonging to or
> in any way pertaining to said real estate, and further
> including any real estate submitted to the Act by
> amendment to this Declaration.

The floor plans reference the elevation of the floor and ceiling, but by no means limit the "boundaries" of the

- 6 -

Case 1:12-cv-00906-CCE-JLW   Document 94   Filed 07/09/14   Page 6 of 19

condominium to the floor and ceiling.  Likewise, later in the Declaration, and specifically at Section 14.9(h), the Declaration states:

> The **Association shall**, at its sole cost and expense, keep its common elements in good order and safe condition, and shall make or cause to be made all repairs therein and thereon, interior and **exterior**, structural and nonstructural, ordinary and extraordinary, necessary to keep same in good order and safe condition, howsoever the necessity or desirability thereof may occur, and whether or not necessitated by wear, tear, obsolence or defects, blatant or otherwise, and the Association shall further be required not to suffer or commit, and to use all reasonable precaution to prevent, waste to such common elements.

Common elements is defined at Section 1.6 as:

> All portions of the Condominium except the Units.

With that said, the Declaration explicitly contemplates **exterior** repairs, in direct contradiction to the Plaintiffs' position that the floor plans referenced constitute some sort of "boundary" defining the Plaintiffs' obligations.

Plaintiffs further reference an earlier portion of Section 14.9(h) in support of their proposition that Defendants are obligated to replace the roof.  Specifically, Plaintiffs cite to the following portion of Section 14.9(h):

> For the benefit of maintaining the value of the Condominium, **Declarant shall**, at its sole cost and expense, keep all portions of the property described on Exhibit A attached hereto, including all portions of the building or buildings within which the condominium

- 7 -

is located, **with the exception of the Property**, in good
order and safe condition, and make all repairs therein
and thereon, interior and exterior, structural and
nonstructural, ordinary and extraordinary, necessary to
keep same in good order and safe condition, howsoever
the necessity or desirability thereof may occur, and
whether or not necessitated by wear, tear, obsolence or
defects, blatant or otherwise, and Declarant further
agrees that it shall not suffer or commit, and shall
use all reasonable precaution to prevent, waste to the
same.

While the Defendants do, pursuant to the Declaration, have obligations concerning Albert Hall, those obligations are with the exception of **the Property** submitted to the Declaration. As previously set forth, that "property" is not in any way limited to the condo units themselves, and the Declaration specifically contemplates that this "property" includes some exterior portion of the building, which could be construed to include the roof. In short, the Declaration, with respect to replacement of the roof, is ambiguous.

In North Carolina:

Covenants accompanying the purchase of real property
are contracts which create private incorporeal rights,
meaning non-possessory rights held by the seller, a
third-party, or group of people, to use or limit the
use of purchased property.

<u>Steiner v. Windrow Estates Homeowners Ass'n, Inc.</u>, 713 S.E.2d 518, 521 (2011). These real covenants are either restrictive or affirmative. <u>Armstrong v. Ledges Homeowners Ass'n</u>, 360 N.C. 547, 555, 633 S.E.2d 78, 85 (2006). For example, restrictive

- 8 -

covenants limit the use of land while affirmative covenants impose obligations such as annual assessments. Id. Additionally, since the law disfavors restrictions on the free use of property, "nothing can be read into a restrictive covenant enlarging it meaning beyond what its language plainly and unmistakably imports." Julian v. Lawton, 240 N.C. 436, 440, 82 S.E. 210, 212 (1954).

Consistent with this rule, all real covenants are to be strictly construed against limitation on the free use of property. Armstrong, 360 N.C. at 555, 633 S.E.2d at 85. Covenants that impose affirmative obligations, however, should be even more strictly construed. Beech Mountain Property Owners Ass'n, Inc. v. Seifart, 48 N.C. App. 286, 295, 269 S.E.2d 178, 183 (1980). Specifically, these **affirmative covenants should not be enforced unless they include "in clear and unambiguous language" a standard by which the Court can "objectively determine" compliance with the covenant**. Id.; emphasis added.

Here, the portions of the Declaration cited by Plaintiffs purport to impose affirmative obligations on a Declarant. Consequently, these real covenants must be even more strictly construed than merely restrictive covenants.

Plaintiffs, in support of their Motion for Partial Summary Judgment, argue that the above portions of the Declaration show only "Defendants tortured attempt to find ambiguity in the Declaration..." (R. 91, Pl. Brief P. 6). Plaintiffs go on to argue that, while such an ambiguity does not exist, "ambiguities in a declaration of condominium are construed against the developer who drafted it." (R. 91, Pl. Brief P. 6, citations omitted). The Declaration is clear, however, that the Developer is the previous owner of Albert Hall, PIRT, and **not** Defendants. Therefore, Plaintiffs' attempt to argue that the Declaration must be construed against Defendants is meritless.

Plaintiffs, nevertheless, go on to argue that "every provision of the Declaration which speaks to boundaries limits the Condominium to interior spaces." (Pl. Brief P. 8). This is simply not true. Section 14.9(h) specifically speaks to the Association's responsibility to make exterior repairs. For this reason, Plaintiffs have not shown, pursuant to the strict review standard which applies to restrictive covenants, that the roof is the "sole propriety of Defendants" and, therefore, their Motion for Partial Summary Judgment must be denied.

**III. Plaintiffs are not entitled to summary judgment on their First and Second Claims for Relief.**

### A. Plaintiffs are not entitled to "appropriate relief" under N.C.G.S. § 47C-4-117 because they cannot show that Defendants failed to comply with the Declaration.

Plaintiffs' First and Second Claims for Relief rest, by their own admission, on their proving the following: (1) Defendants are subject to the North Carolina Condominium Act; (2) Defendants have failed to comply with a provision of the Act, the Declaration, or the bylaws of a condominium subject to the Act; and (3) Plaintiffs have been adversely affected by Defendants' failure. See N.C.G.S. § 47C-4-117. Plaintiffs cannot make such a showing here.

Plaintiffs first argue, at great length, that Defendants are subject to the North Carolina Condominium Act. As plainly stated in the first paragraph of their argument, "Defendants admit that they are legally bound by the Declaration" and the Declaration is governed by Chapter 47C. Defendants do not dispute that the parties to this action are bound by the North Carolina Condominium Act.

Defendants, however, dispute that they have failed to comply with a provision of the Act, the Declaration, or the bylaws of a condominium subject to the Act. Plaintiffs argue that Defendants have failed to comply with their duties under Section 14.9 of the Declaration, specifically that Defendants would "do that which is necessary to keep the condition of the building, its structural

- 11 -

components, and the underlying realty in good condition." Plaintiffs blatantly ignore, however, their own responsibilities under the Declaration, specifically at Section 14.9(h):

> The **<u>Association shall</u>**, at its sole cost and expense, keep its common elements in good order and safe condition, and shall make or cause to be made all repairs therein and thereon, interior and **exterior**, structural and nonstructural, ordinary and extraordinary, necessary to keep same in good order and safe condition, howsoever the necessity or desirability thereof may occur, and whether or not necessitated by wear, tear, obsolence or defects, blatant or otherwise, and the Association shall further be required not to suffer or commit, and to use all reasonable precaution to prevent, waste to such common elements.

In light of this provision, the evidence simply does not warrant a finding that "Defendants must replace at least the northern portion of the roof of Albert Hall." Rather, the Declaration shows, at best, an ambiguity as to whether either party to this action has an obligation, under the Declaration, to replace the northern portion of the roof of Albert Hall.

In light of the fact that Plaintiffs cannot show this Court that Defendants violated the North Carolina Condominium Act, the issue of the adverse effect of the roof is moot. Nevertheless, Defendants do not dispute that the northern half of the roof needs to be replaced, and that the condition of the roof, amongst other conditions, may be causing damage to Plaintiffs. The issue remains, however, that Plaintiffs cannot show this Court that

- 12 -

Defendants have any obligation, in law or otherwise, to replace the northern half of the subject roof.

   B. **Plaintiffs have not shown this Court, as a matter of law, that they are entitled to the injunctive relief and/or damages sought.**

> **If** a declarant or any other person subject to this chapter **fails to comply** with any provision hereof or any provision of the declaration or bylaws, any person or class of person adversely affected by that failure has a claim for appropriate relief.

N.C.G.S. § 47C-4-117.

Because Plaintiffs cannot show that Defendants have failed to comply with a provision of the Act, they are not entitled to relief pursuant to N.C.G.S. § 47C-4-117, including an injunction or damages.

## IV. Plaintiffs are not entitled to summary judgment on their Third Claim for Relief because they cannot show, as a matter of law, that Defendants are responsible for replacing the roof.

In support of their claim for abatement of a private nuisance, Plaintiffs argue that "[t]he evidence noted in the preceding sections establishes that Defendants own the roof of Albert Hall and that, as a result of the manner in which they have maintained it, water has infiltrating [sic] into the Condominium and, more specifically, into the Unit owned by Mr. Smith." (Pl. Brief P. 16). Again, Plaintiffs' argument is premised on their assertion that Defendants are obligated to

- 13 -

Case 1:12-cv-00906-CCE-JLW   Document 94   Filed 07/09/14   Page 13 of 19

replace the northern half of the roof of Albert Hall. As the provisions of the Declaration previously set forth show, this is simply not the case.

In addition, the cases cited by Plaintiffs in support of their assertion that Defendants are obligated to replace the northern half of the roof of Albert Hall are factually dissimilar to the issues here, and do not support a grant of summary judgment in Plaintiffs' favor.

For example, Elliott v. Muelbach, 173 N.C. App. 709, 620 S.E.2d 266 (2005), a case cited by the Plaintiffs for the proposition that one who creates a private nuisance is liable for the resulting injury, is a case involving two adjoining properties, where a child on one of the properties built a dirt track on which to ride his ATV, bothering the persons on the other property. The facts of this case have absolutely nothing to do with the case at bar.

Similarly, Plaintiffs cite to Pendergrast v. Aiken, 293 N.C. 201, 236 S.E.2d 787 (1977), for the proposition that a cause of action for unreasonable interference with the flow of surface water causing substantial damage is a private nuisance action. It seems illogical to argue that Defendants are interfering with the flow of surface water, an intentional act, when what Plaintiffs are seeking by way of the present Motion is an

injunction and/or damages for the Defendants' failure to act with respect to the roof.  Nevertheless, Pendergrast sets out that such a nuisance typically occurs when (1) a landowner unreasonably or intentionally interferes with the flow of surface water; or (2) when a landowner acts negligently or recklessly in the course of a dangerous activity.  In order to show Defendants acted unreasonably, Plaintiffs must first show that Defendants had an obligation to replace the northern half of the roof of Albert Hall.  For the reasons set forth previously, and specifically due to the terms of the parties Declaration, Defendants had/have no such obligation.  Likewise, as set forth previously, Plaintiffs cannot argue on the one hand Defendants' failure to act, and on the other, Defendants' intentional act.  Finally, there has been no allegation of any dangerous activity.  Therefore, like Elliott, Pendergrast is factually dissimilar to the issues presented here, and does not support the Plaintiffs' Motion for Partial Summary Judgment.

A case more factually relevant to the issues presented here is Mudusar, By and Through Baloch v. V.G. Murray & Co., Inc., 100 N.C. App. 395, 396 S.E.2d 325 (1990).  In that case, the North Carolina Court of Appeals considered whether a landlord can be held liable, under a theory of negligence or private nuisance, for failing to install and maintain protective window screens.

Preliminarily, the Court concluded there was no express agreement or common law duty to maintain window screens. Bearing that in mind, the Court determined that, "[i]n the absence of such an express agreement owed to plaintiff, the pleadings and proof do not state a cause of action for negligence or private nuisance." Id. at 397, 396 S.E.2d 325 at 327. Similarly, in the present case, there is no express agreement in the relevant Declaration requiring Defendants to replace the roof, and there is no common law duty to do so, either. Therefore, Plaintiffs' cause of action for private nuisance fails.

In short, because Plaintiffs' argument in support of summary judgment for abatement of a private nuisance is premised, by Plaintiffs' own admission, on the assertion that Defendants are obligated, under the Declaration, to replace the northern half of the roof of Albert Hall, Defendants respectfully submit to this Court that Plaintiffs are not entitled to summary judgment on this issue.

**V. Plaintiffs are not entitled to summary judgment on their Fourth Claim for Relief because they cannot show, as a matter of law, that Defendants are responsible for replacing the roof.**

Plaintiffs' claim for trespass is simply unsupported by any relevant cases, statutes, or other authority. Plaintiffs, interestingly, do not cite to a single case in which any Court

- 16 -

found that the failure of an owner to replace a roof over a condominium association, absent any legal or common law duty to do so, constituted trespass.

Likewise, a claim for trespass requires "an unauthorized entry by the defendant." Woodring, 180 N.C. App. 362, 376, 637 S.E.2d 269, 280 (2006). As the previously cited Declaration provisions show, Plaintiffs have an obligation to make exterior repairs to Albert Hall. (See Declaration Section 14.9(h)). Therefore, to the extent water is entering Plaintiffs' property, that is an entry by the Plaintiffs, not Defendants.

Moreover, as Plaintiffs' own admission is that each of their claims relevant to the present Motion rests upon Defendants' obligation to replace the roof, Defendants respectfully submit to this Court that Plaintiffs have not made such a showing and, therefore, their Motion for Partial Summary Judgment with respect to their Fourth Claim for Relief should be denied.

## **CONCLUSION**

In sum, neither the Declaration at issue, nor any other authority cited by the Plaintiffs, sets out in any way, explicit or otherwise, the entity to whom the obligation to replace the roof of Albert Hall belongs. For this reason, Defendants

- 17 -

Case 1:12-cv-00906-CCE-JLW   Document 94   Filed 07/09/14   Page 17 of 19

respectfully move this Court to deny Plaintiffs' Motion for Partial Summary Judgment.

This the 9th day of July, 2014.

>/s/ Gary K. Sue
>NC State Bar No. 13128
>Burton, Sue & Anderson, L.L.P.
>Post Office Box 20083
>Greensboro, NC  27420
>Telephone:  (336) 275-0512
>Attorney for Defendants
>E-mail:**gary.sue@burtonandsue.com**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Defendants' Response to Plaintiffs' Motion for Partial Judgment on the Pleadings was served upon all counsel of record by electronic transmission addressed as follows:

Mr. Michael L. Robinson
Mr. H. Stephen Robinson
Robinson & Lawing, LLP
101 North Cherry Street, Suite 720
Winston-Salem, NC  27101-4035
Telephone:  (336) 631-8500
Attorneys for Plaintiffs
E-mail:  **mrobinson@robinsonlawing.com**
　　　　　**srobinson@robinsonlawing.com**

This the 9th day of July, 2014.

　　　　　　　　　　/s/ Gary K. Sue
　　　　　　　　　　NC State Bar No. 13128
　　　　　　　　　　Burton, Sue & Anderson, L.L.P.
　　　　　　　　　　Post Office Box 20083
　　　　　　　　　　Greensboro, NC  27420
　　　　　　　　　　Telephone:  (336) 275-0512
　　　　　　　　　　Attorney for Defendants
　　　　　　　　　　E-mail:**gary.sue@burtonandsue.com**